# In the United States Court of Federal Claims

<table>
<tr>
<td>

ELECTRICAL WELFARE TRUST
FUND, *et al.*,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

</td>
<td>

No. 19-cv-353

Filed: July 7, 2023

Publication: July 13, 2023[1]

</td>
</tr>
</table>

*Joseph Howard Meltzer*, Kessler, Topaz, Meltzer & Check, LLP, Radnor, Pennsylvania for Plaintiffs.  With him on the briefs were *Melissa L. Troutner*, Kessler, Topaz, Meltzer & Check, LLP, Radnor, Pennsylvania; *Charles F. Fuller*, McChesney & Dale, P.C., Bowie, Maryland.

*Borislav Kushnir*, Trial Attorney, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C. for Defendant.  With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Washington, D.C.; *Patricia M. McCarthy*, Director, United States Department of Justice, Civil Division, Washington, D.C.; *Eric P. Bruskin*, Assistant Director, United States Department of Justice, Civil Division, Washington, D.C.; *Kenneth Whitley*, Attorney, United States Department of Health and Human Services, Office of the General Counsel, Washington, D.C.; *Robert Balderson*, Attorney, United States Department of Health and Human Services, Office of the General Counsel, Washington, D.C.

## MEMORANDUM AND ORDER

Pending before this Court is Defendant United States' Motion for Partial Summary Judgment (ECF No. 105), urging this Court to dismiss the remaining claim in this action seeking just compensation under the Takings Clause of the Fifth Amendment.  Specifically, Plaintiffs

---

[1] This Memorandum and Order was filed under seal in accordance with the Protective Order entered in this case (ECF No. 35) and was publicly reissued after the parties indicated redactions were not necessary.  *See* Notice (ECF No. 131).  The sealed and public versions of this Memorandum and Order are otherwise substantively identical, except for a minor typographical edit, the publication date, and this footnote.

Operating Engineers Trust Fund of Washington, D.C. (OETF) and Stone & Marble Masons of Metropolitan Washington, D.C. Health and Welfare Fund (Stone Masons) (collectively, Plaintiffs) seek to recover amounts paid under United States Department of Health and Human Services' (HHS's) regulations implementing the Patient Protection and Affordable Care Act of 2010's (ACA's) Transitional Reinsurance Program (TRP) for benefit years 2014 through 2016.  Second Amended Complaint (ECF No. 59) (2d Am. Compl.).   Plaintiffs contend Defendant's implementation of the TRP amounted to a taking under the Fifth Amendment such that Plaintiffs are owed just compensation for their mandatory, paid contributions into the program.  *Id.* ¶¶ 13–14.   Plaintiffs primarily assert their respective payment of TRP contributions, mandated by Defendant, amounted to a *per se* taking.  *Id.* ¶108.  Plaintiffs further contend Defendant's actions would also satisfy the requirements of either a categorical or non-categorical regulatory taking. *Id.* ¶¶ 108–09; Plaintiffs' Response to Motion for Partial Summary Judgment (ECF No. 116) (Resp.) at 30–44.

The issue presented by Defendant's Motion for Partial Summary Judgment (Motion) is a straightforward question of law concerning whether a Fifth Amendment taking occurred.  *See* ECF No. 105 (Mot.).  Indeed, the parties agree that the facts necessary to rule on Defendant's Motion are undisputed.[2]  *See generally* Mot.; *see also* Resp. at 11 (stating the "undisputed facts in this case

---

[2] While the parties do not dispute the facts relevant to step one of the Federal Circuit's two-step takings analysis, Plaintiffs attempt to argue that genuine issues of material fact may remain related to step two, specifically Defendant's secondary argument that Plaintiffs' claims are untimely under a regulatory takings analysis.  Resp. at 8–9 ("[E]ven if a regulatory analysis is applied, the Government has not carried its burden to show there are no genuine issues of material fact as to whether a regulatory taking occurred . . . .");  Transcript of Oral Argument, dated May 11, 2023 (ECF No. 126) (Trans.) at 37:4–15.  This Court expressed skepticism towards Plaintiffs' characterization during oral argument.  *See* Trans. at 37:16–18 (noting, in response to Plaintiffs' counsel's claim that they may need a more fulsome record, that discovery had closed).  Even accepting Plaintiffs' view, however, the existence of such purported issues of fact would be relevant only if this Court were to reach step two of the takings analysis, which, it does not.  *See infra* Discussion Sections I and II.

show that" Plaintiffs have a cognizable property interest in assets held within their funds and that

Defendant "seized this identifiable property").   In its Motion, Defendant contends Plaintiffs'

takings claims must be dismissed because they suffer from three "fundamental problems"; the

claims (i) fail to identify a relevant property interest cognizable under the Takings Clause of the

Fifth Amendment, (ii) are time-barred, and (iii) do not address government action that amounts to

a taking of property.  Mot. at 10.  This Court conducted oral argument on Defendant's Motion on

May 11, 2023, and the Motion is ripe for adjudication.  *See* Trans.

This Court has considered each of the parties' filings and arguments.  For the reasons

explained below, Defendant's Motion for Partial Summary Judgment is **GRANTED**.  Plaintiffs'

Motion for Leave to File to Amend Takings Class Definition in the Second Amended Class Action

Complaint (ECF No. 83) and Motion to Certify Takings Class (ECF No. 84) are accordingly

**DENIED AS MOOT**.

## **BACKGROUND**

This action has a lengthy history, familiarity with which is presumed.  *See, e.g., Elec.*

*Welfare Trust Fund* (*EWTF*) *v. United States*, 155 Fed. Cl. 169 (2021) (ECF No. 22).   A

background summary pertinent to Defendant's Motion follows.

### I.    **Plaintiffs' Health Plans**

Plaintiffs are group health plans[3] created through collective bargaining and regulated by

the Labor Management Relations Act of 1947 (Taft-Hartley) and the Employee Retirement Income

---

[3] "[G]roup health plan" is defined by statute as,

>    an employee welfare benefit plan (as defined in [29 U.S.C. § 1002(1)]) to the extent
> that the plan provides medical care (as defined in paragraph (2)) . . . to employees
> or their dependents (as defined under the terms of the plan) directly or through
> insurance, reimbursement, or otherwise.  Except for purposes of part C of title XI
> of the Social Security Act (42 U.S.C. 1320d et seq.), such term shall not include

Security Act of 1974 (ERISA).  2d Am. Compl. ¶ 3.  Plaintiffs' group health plans "are funded through employee contributions to a multiemployer benefit trust, and benefits under the plans are provided to covered workers and their families pursuant to negotiated wages, hours, and terms of employment through a collective bargaining agreement between one or more unions and more than one employer."  *Id.*  Participation in these plans is limited to employees who share "a common employer (or affiliated employers), coverage under one or more collective bargaining agreements, membership in a labor union, or membership in one or more locals of a national or international labor union."  2d Am. Compl. ¶ 35.  Pursuant to 29 U.S.C. § 1103 (ERISA), these plans use funds which are held in trust for the exclusive benefit of the plan participant, and which cannot be used for any other purpose.  *Id.* ¶ 36.

Plaintiffs' group health plans are self-insured.  *Id.* ¶ 3.  Self-insured multiemployer plans may be administered in one of three ways: (1) self-administered, (2) administered by a third-party administrator that is not a health insurance issuer, or (3) administered by a third-party administrator that is a health insurance issuer through an administrative services only (ASO) agreement.  *EWTF*, 155 Fed. Cl. at 175 (2021); *see* 2d Am. Compl. ¶ 39.

The parties agree that OETF[4] and Stone Masons[5] are each administered by a third-party administrator that is not a health insurance issuer.  *EWTF*, 155 Fed. Cl. at 175; 2d Am. Compl. ¶¶ 23–31; Mot. at 13.  These third-party administrators: (1) determine eligibility and control enrollment for participants, (2) perform claims processing and adjudication, and (3) directly pay

---

any qualified small employer health reimbursement arrangement (as defined in section 9831(d)(2) of Title 26).

42 U.S.C. § 300gg-91(a)(1).

[4] OETF's third-party administrator is Associated Administrators, LLC.  Second Am. Compl. ¶ 26.

[5] Stone Masons' third-party administrator is Carday Associates, LLC.  Second Am. Compl. ¶ 30.

the health care costs incurred by the OETF and Stone Masons participants and beneficiaries. *EWTF*, 155 Fed. Cl. at 175; 2d Am. Compl. ¶ 26.

## II.    Transitional Reinsurance Program

The TRP was one of several programs established by the ACA to distribute the financial risk carried by health insurance issuers covering higher-risk populations.  42 U.S.C. § 18061 (codifying the TRP).  To fund the program, the ACA required "health insurance issuers, and third party administrators on behalf of group health plans" pay into the appropriate reinsurance pool, whether state or federal, for a three-year period. 42 U.S.C. § 18061(b)(1)(A).  The funds collected from the entities described in section (a)(1) were used to reimburse "health insurance issuers" for enrolling high-risk individuals in the individual marketplace.  42 U.S.C. § 18061(b)(1)(B).

Congress delegated authority to HHS to implement the TRP, requiring HHS—in consultation with the National Association of Insurance Commissioners (NAIC)—create federal standards for the program.  42 U.S.C. § 18061(b)(1).  Between July 2011 and March 2014, HHS published three sets of proposed and final rules defining the group of entities that were required to contribute to the TRP under 42 U.S.C. § 18061(b)(1) as "contributing entities."  *See* Motion to Dismiss (MTD) App. 3 (77 Fed. Reg. 17,220 (March 23, 2012)) (ECF No. 6-3) (2012 Final Rule); MTD App. 6 (78 Fed. Reg. 15,410 (March 11, 2013)) (ECF No. 6-6) (2013 Final Rule); MTD App. 9 (79 Fed. Reg. 13,744 (March 11, 2014)) (ECF No. 6-9) (2014 Final Rule).

On March 11, 2014, HHS published its third final rule defining "contributing entity."  *See* 2014 Final Rule.  HHS's definition of "contributing entity" in its 2014 Final Rule reads as follows:

> *Contributing entity* means—
> (1) a health insurance issuer; or
> (2) For the 2014 benefit year, a self-insured group health plan (including a group health plan that is partially self-insured and partially insured, where the health insurance coverage does not constitute major medical coverage), whether or not it uses a third party administrator; and for the 2015 and 2016 benefit years, a self-

> insured group health plan (including a group health plan that is partially self-insured and partially insured, where the health insurance coverage does not constitute major medical coverage) that uses a third party administrator in connection with claims processing or adjudication (including the management of internal appeals) or plan enrollment for services other than for pharmacy benefits or excepted benefits within the meaning of section 2791(c) of the PHS Act.  Notwithstanding the foregoing, a self-insured group health plan that uses an unrelated third party to obtain provider network and related claim repricing services, or uses an unrelated third party for up to 5 percent of claims processing or adjudication or plan enrollment, will not be deemed to use a third party administrator, based on either the number of transactions processed by the third party, or the volume of the claims processing and adjudication and plan enrollment services provided by the third party.  A self-insured group health plan that is a contributing entity is responsible for the reinsurance contributions, although it may elect to use a third party administrator or administrative services-only contractor for transfer of the reinsurance contributions.

*Id.* at 4763; 45 C.F.R. § 153.20 (2019) (codifying the definition of "contributing entity" as announced in the 2014 Final Rule).

### III.    Plaintiffs' Contributions to the TRP

For benefit year 2014, Defendant required Plaintiffs OETF and Stone Masons— "contributing entities"—to pay a contribution of $63 per covered life.  2d Am. Compl. ¶ 80; HHS Notice of Benefit and Payment Parameters for 2014, 78 Fed. Reg. at 15,460.  For benefit years 2015 and 2016, Defendant required OETF and Stone Masons to pay a contribution of $44 and $27 per covered life, respectively.  HHS Notice of Benefit and Payment Parameters for 2015, 79 Fed. Reg. at 13,775; HHS Notice of Benefit and Payment Parameters for 2016, 80 Fed. Reg. at 10,775.

OETF remitted TRP contribution payments to Defendant in the amount of $142,569 on January 12, 2015; $107,712 on January 8, 2016; and $72,873 on January 10, 2017.  *Id.* ¶ 83; Appendix to Defendant's Motion for Summary Judgment (ECF No. 105-1) (Mot. App.) at 197 (OETF 2014 Contribution); Mot. App. at 198 (OETF 2015 Contribution); Mot. App. at 199 (OETF 2016 Contribution).  Collectively, OETF paid Defendant $323,154 for benefit years 2014, 2015, and 2016.  2d Am. Compl. ¶ 27.  Stone Masons remitted TRP contribution payments to Defendant

in the amount of $20,664 on January 14, 2015; $14,476 on January 14, 2016; and $11,637 on January 13, 2017.  *Id.* ¶ 84; Mot. App. at 200 (Stone Masons 2014 Contribution); Mot. App. at 201 (Stone Masons 2015 Contribution); Mot. App. at 202 (Stone Masons 2016 Contribution).  Collectively, Stone Masons paid Defendant $46,777 for benefit years 2014, 2015, and 2016.  *Id.* ¶ 31.  OETF and Stone Masons each paid their TRP contributions with monies held in their respective trust accounts.  2d Am. Compl. ¶ 85; *see* OETF 2014 Contribution; OETF 2015 Contribution; OETF 2016 Contribution; Stone Masons 2014 Contribution; Stone Masons 2015 Contribution; Stone Masons 2016 Contribution.

### IV.    Procedural Background and Motion to Dismiss

Plaintiffs EWTF, OETF, and Stone Masons filed their Complaint in the present action on March 8, 2019, alleging two sets of claims—illegal exaction claims and claims brought pursuant to the Takings Clause of the Fifth Amendment.  Complaint (ECF No. 1) (Compl.).

On May 7, 2019, Defendant moved to dismiss Plaintiffs' complaint for lack of jurisdiction[6] and for failure to state a claim, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (Rules), and alternatively moved for summary judgment.  *See* MTD.  Defendant argued that requiring Plaintiffs to pay TRP contributions did not amount to an illegal exaction because HHS's definition of "contributing entities" was in accordance with statutory text and was owed deference consistent with *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  MTD at 26–28.  Further, Defendant argued Plaintiffs failed to state valid takings claims because the requirement to pay TRP contributions imposed only an obligation to pay money.  *Id.* at 20–23.

---

[6] Defendant withdrew its Rule 12(b)(1) motion at oral argument.  Defendant's Reply in Support of its Motion to Dismiss (ECF No. 8) at 25 n.8; Oral Argument Transcript, dated October 12, 2020 (ECF No. 21) at 5:13–19.

On February 27, 2020, this case was reassigned to the undersigned judge. *See* Order Reassigning Case (ECF No. 15). On July 30, 2021, this Court subsequently granted in part and denied in part Defendant's Motion to Dismiss and, relevant here, dismissed OETF's and Stone Masons' illegal exaction claims. *EWTF*, 155 Fed. Cl. at 184–88. In doing so, this Court reasoned the ACA empowered HHS to collect TRP contributions from entities that used third-party administrators, such as OETF and Stone Masons. *Id.* The Court denied the motion with regard to EWTF—a self-insured, self-administered group health plan—as the plain text of the ACA did not provide HHS the authority to collect TRP contributions from self-insured group health plans that did not use a third-party administrator. *EWTF*, 155 Fed. Cl. at 181–84 ("As EWTF clearly alleged that it is a self-funded, self-administered plan that does not use a third-party administrator, Defendant's [motion to dismiss] EWTF's illegal exaction claim must be denied.").

With respect to Plaintiffs' takings claims, this Court identified the central inquiry as "whether Plaintiffs' ERISA funds constitute a 'specific fund of money' protected by an 'identified property interest.'" *Id.* at 189. Though it rejected some of Plaintiffs' arguments, this Court ultimately denied Defendant's Motion to Dismiss without prejudice as it related to Plaintiffs' takings claims. *EWTF*, 155 Fed. Cl. at 193. While Plaintiff narrowly survived dismissal at the 12(b)(6) stage, this Court nevertheless highlighted that the record lacked clarity regarding the "specific property right that the TRP operates to extract." *Id.* at 191. In denying Defendant's Motion to Dismiss without prejudice, this Court specifically previewed its concerns and warned that to adjudicate the claim in the future (either via amended complaint and a motion to dismiss or via a summary judgment motion), it would need "further information concerning: (1) the nature of plaintiffs' property interest in their respective group health care plans, and (2) the effect, if any,

the TRP had on those alleged property interests." *Id.* at 188–93.[7]

### V.      Subsequent Filings & Motion for Partial Summary Judgment

Plaintiffs EWTF, OETF, and Stone Masons filed an Amended Complaint (ECF No. 28) on September 14, 2021, and a Second Amended Complaint (ECF No. 59) on May 2, 2022.   On October 28, 2022, Plaintiffs EWTF, OETF, and Stone Masons filed two motions related to their takings claims: (1) a Motion for Leave to File to Amend Takings Class Definition in the Second Amended Class Action Complaint (ECF No. 83) and (2) a Motion to Certify Takings Class (ECF No. 84) (Class Certification Motions, collectively) using Plaintiffs' proposed amended class definition.

Prior to these filings, this Court had certified an Illegal Exaction Class, with EWTF serving as class representative, but had not yet granted summary judgment to the Class on their illegal exaction claims.  Order Granting Motion to Certify Illegal Exaction Class (ECF No. 70).  EWTF was thus able to proceed on dual claim tracks until December 21, 2022, when this Court granted the Illegal Exaction Class's unopposed Motion for Summary Judgment (ECF No. 72).  *See* Order Granting EWTF's Motion for Summary Judgment on the Illegal Exaction Claims (ECF No. 97); Transcript, dated December 21, 2022 (ECF No. 100) at 4:16–5:8.  This Court and the parties agreed that the granting of summary judgment for EWTF's illegal exaction claim barred it from maintaining its Fifth Amendment taking claim.  *See EWTF*, 155 Fed. Cl. at 188 n.11 ("[I]f EWTF ultimately succeeds on its illegal exaction claim, it cannot also proceed under its Takings Claims.");  Plaintiffs' Motion to Certify Takings Class (ECF No. 84) at 1 n.1 ("Members of the Exaction Class who obtain judgment in their favor cannot be members of the Takings Class . . . .");

---

[7] The Court similarly denied Defendant's Motion to Dismiss (ECF No. 6) without prejudice to the extent the parties urged the Court to consider it as one for summary judgment, noting that "genuine issues of material fact [were] in dispute concerning the nature of the plaintiffs' property interest and the effect the TRP had on those alleged property interests." *EWTF*, 155 Fed. Cl. at 193 n.13

Trans. at 17:14–20 (Defendant's counsel: "I do want to clarify, when I say 'plaintiffs,' I'm talking about OETF, the [Stone Masons], not about EWTF[,] . . . the takings plaintiffs."); *see also Reid v. United States*, 148 Fed. Cl. 503, 528 (2020) (citing *Orient Overseas Container Line (UK) Ltd. v. United States*, 48 Fed. Cl. 284, 289 (2000)) ("When the government expropriates property, a plaintiff can obtain relief under either a takings theory or an illegal-exaction theory . . . but not both."); *Figueroa v. United States*, 57 Fed. Cl. 488, 496 (2003), *aff'd*, 466 F.3d 1023 (Fed. Cir. 2006). Accordingly, on December 21, 2022, EWTF ceased being a plaintiff related to the takings claims asserted in the Second Amended Complaint.

On January 31, 2023, Defendant moved for partial summary judgment on OETF's and Stone Masons' takings claims. *See* Mot. On agreement of the parties, this Court stayed consideration of the pending Class Certification Motions related to Plaintiffs' takings claims until after this Court's ruling on Defendant's Motion. Order Staying Consideration of Class Certification Motions (ECF No. 115); *see* Defendant's Response to Motion to Certify Class (ECF No. 98) at 20 ("[T]he Court should first decide whether OETF and Stone Masons can maintain a takings claim against the United States, and only then, in the event OETF and Stone Masons prevail, decide whether a class of similarly-situated plans should be certified."); Plaintiffs' Reply to Response to Motion to Certify Class (ECF No. 102) at 17 ("Plaintiffs do not oppose the Government's request to have dispositive motions adjudicated prior to class certification."). This Court subsequently conducted oral argument on Defendant's Motion on May 11, 2023. *See* Trans.

## STANDARD OF REVIEW

A court may grant summary judgment if the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The moving party bears the initial burden to

demonstrate the absence of any genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A genuine factual dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The court may only grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita, Elec. Indus. Co., Ltd. v. United States*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  Summary judgment is especially appropriate when "the only disputed issues [are] issues of law."  *Dana Corp. v. United States*, 174 F.3d 1344, 1347 (Fed. Cir. 1999).

## DISCUSSION

The Tucker Act provides this Court with jurisdiction "to render judgment upon any claim against the United States founded . . . upon the Constitution" as long as the constitutional provision "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained."  28 U.S.C. § 1491(a)(1); *United States v. Testan*, 424 U.S. 392, 400 (1976) (quoting *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 607 (1967)).  Such claims include those brought pursuant to the Takings Clause of the Fifth Amendment, which provides that private property shall not "be taken for public use, without just compensation."  U.S. Const. amend. V; *see Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008) ("It is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act jurisdiction.").  The Takings Clause "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."  *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

This Court analyzes takings claims via a two-step approach provided by the United States Court of Appeals for the Federal Circuit (Federal Circuit). *See Adams v. United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004); *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed. Cir. 2002). *First*, the court must identify the property interest that was allegedly taken and determine whether such a property interest is cognizable under the Takings Clause of the Fifth Amendment. *Adams*, 391 F.3d at 1218; *see Tyler v. Hennepin Cnty.*, 143 S. Ct. 1369 (2023) (analyzing a Fifth Amendment taking claim by first identifying the plaintiff's interest in the appropriated property). *Second*, "[o]nce a property right has been established, the court must then determine whether a part or a whole of that interest has been appropriated by the government for the benefit of the public." *Members of Peanut Quota Holders Ass'n v. United States*, 421 F.3d 1323, 1330 (Fed. Cir. 2005) (citing *Conti v. United States*, 291 F.3d 1334, 1339 (Fed. Cir. 2002)); *see Karuk Tribe of Cal. v. Ammon*, 209 F.3d 1366, 1374 (Fed. Cir. 2000) ("If a plaintiff possesses a compensable property right, . . . a court determines whether the governmental action at issue constituted a taking of that [right].") (citing *M & J Coal Co. v. United States*, 47 F.3d 1148, 1154 (Fed. Cir. 1995)). However, courts cannot reach this second step without initially identifying a cognizable property interest. *Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1329 (Fed. Cir. 2012); *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1213 (Fed. Cir. 2005).

Plaintiffs contend both steps of the takings analysis are satisfied by Defendant's "requirement that [Plaintiffs] relinquish funds held in self-insured health and welfare trust funds to pay the [TRP] Contribution," which "constitutes a . . . taking." 2d Am. Compl. ¶¶ 108–09. Specifically, Plaintiffs argue the first step of the analysis is satisfied either because (i) "[f]unds held in self-insured health and welfare trust funds constitute identifiable property interests in specific funds of money," or (ii) Plaintiffs' TRP contributions were effectively required to be paid

with moneys contained within their trust accounts since ERISA required Plaintiffs to hold their monetary assets in such trust accounts. *Id.* ¶ 103; Resp. at 20–27; Trans. at 25:24–26:2, 31:9–15. Regarding the second step of the takings analysis, Plaintiffs assert the forced payment of TRP contributions satisfies the requirements to be considered as either a *per se* or regulatory taking, although they view a *per se* analysis as more appropriate. 2d. Am. Compl. ¶¶ 108–09; Resp. at 30–44.

Defendant disagrees, asserting as an initial matter that a required TRP contribution is an ordinary obligation to pay money rather than a taking. Accordingly, Defendant contends that such an obligation "cannot itself be a taking of property, as it does not implicate the type of 'property' protected by the Fifth Amendment." Defendant's Reply in Support of its Motion for Partial Summary Judgment (ECF No. 121) (Reply) at 9. Even if this Court were to find Plaintiffs have a cognizable property interest in the money paid as TRP contributions, Defendant argues its actions cannot be considered to have effected *per se* takings since Defendant did not physically appropriate property. *Id.* at 13–25. Defendant also asserts its actions cannot be considered to have effected a regulatory taking, as the claims are untimely and fail under the *Penn Central* factors. *Id.*; *see Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978).

Since the relevant material facts necessary to resolve this Motion are not in dispute,[8] this Court now considers Defendant's Motion for Partial Summary Judgment and whether Plaintiffs' TRP contributions constitute takings compensable under the Takings Clause. *See EWTF*, 155 Fed. Cl. at 184–88; *see also* Mot. at 13–17 (providing "Undisputed Material Facts"); Resp. at 11 (stating the "undisputed facts in this case show that" Plaintiffs have a cognizable property interest in assets

---

[8] *See supra* note 2 (noting the parties agree that the facts are not in dispute related to step one of the takings analysis).

held within their funds and that Defendant "seized this identifiable property").   As described

below, this Court's inquiry begins and ends with the first prong of the Federal Circuit's two-step

takings analysis, as Plaintiffs do not possess a property interest in the money paid as TRP

contributions that is cognizable under the Takings Clause.

## I.      Plaintiffs Do Not Possess a Property Interest Cognizable Under the Takings Clause.

It is well-established that a property interest in money alone is generally not cognizable

under the Takings Clause of the Fifth Amendment.  *See E. Enters. v. Apfel*, 524 U.S. 498, 540

(1998) (Kennedy, J., concurring) (stating in a controlling concurrence that although the statute at

issue "imposes a stagging financial burden on the petitioner, . . . . [i]t does not operate upon or

alter an identified property interest, and it is not applicable to or measured by a property interest")[9];

---

[9] *Eastern Enterprises v. Apfel* involved a challenge to the retroactive liability provisions of the Coal Industry Retiree Health Benefit Act of 1992, codified at 26 U.S.C. §§ 9701–9722 (the Coal Act) which required a former mining company to pay a large sum of money for the health benefits of retired employees. 524 U.S. at 504.  Writing for the plurality, Justice O'Connor, joined by three other justices (Chief Justice Rehnquist, Justice Scalia, and Justice Thomas), concluded the retroactive impact of the Coal Act as applied to Eastern Enterprises resulted in an unconstitutional taking of property because it placed a "severe, disproportionate, and extremely retroactive burden on Eastern." *Id.* at 538.  As explained by the Federal Circuit in *Commonwealth Edison Co.*, a plurality of the Supreme Court found the retroactive liability unconstitutional, but five Justices concluded the law did not effect a taking, as the law did not appropriate a specific property interest but rather imposed an obligation to pay money. 271 F.3d at 1339 (citing *E. Enters.*, 524 U.S. at 540 (Kennedy, J., concurring)).     Concurring, Justice Kennedy acknowledged the statute "impose[d] a staggering financial burden," which factored into his conclusion that the statute violated Eastern's due process rights. *E. Enters.*, 524 U.S. at 540 (Kennedy, J., concurring). Nevertheless, Justice Kennedy explained, the law did not effect a taking because it did not "operate upon or alter" a "specific and identified propert[y] or property right," such as "an estate in land (e.g., a lien on a particular piece of property), a valuable interest in an intangible (e.g., intellectual property), or even a bank account or accrued interest." *Id.* at 540–41.  Instead, "[t]he law simply imposes an obligation to perform an act, the payment of benefits.  The statute is indifferent as to how the regulated entity elects to comply or the property it uses to do so." *Id.* at 540.  Justice Breyer, writing for three other Justices (Justice Stevens, Justice Souter, and Justice Ginsburg), agreed the Takings Clause was not implicated, viewing the Takings Clause as applying only when the government appropriates a "specific interest in physical or intellectual property" or "a specific, separately identifiable fund of money." *Id.* at 554–55 (Breyer, J., dissenting).  By contrast, Justice

*id.* at 554 (Breyer, J., dissenting) (agreeing with Justice Kennedy that "[t]he Constitution's Takings Clause does not apply" since "[t]his case involves not an interest in physical or intellectual property, but an ordinary liability to pay money"); *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1338–40 (Fed. Cir. 2001) (en banc) ("[T]he mere imposition of an obligation to pay money . . . does not give rise to a claim under the Takings Clause of the Fifth Amendment."). Such a rule comports with the long-recognized differentiation between real or personal property and money, as the latter is fungible in ways the former are not. *See United States v. Sperry Corp.*, 493 U.S. 52, 62 n.9 (1989) ("It is artificial to view deductions of a percentage of a monetary award as physical appropriations of property.  Unlike real or personal property, money is fungible."); *E. Enters.*, 524 U.S. at 540 (Kennedy, J., concurring) ("The Coal Act does not appropriate, transfer, or encumber an estate in land (*e.g.,* a lien on a particular piece of property), a valuable interest in an intangible (*e.g.,* intellectual property), or even a bank account or accrued interest.  The law simply imposes an obligation to perform an act, the payment of benefits.").

While one cannot possess a cognizable property interest in money generally, one's property interest in a *specific fund* of money—e.g., the interest or principal of an identified account—is cognizable under the Takings Clause such that government deprivation can amount to a taking. *See Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160–65 (1980) (finding a taking of a specific fund of money where a court appropriated the interest earned on principal held in an interpleaded account); *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 163–72 (1998) (finding interest earned in an Interest on Lawyer Trust Account (IOLTA) remained the private property of the clients); *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 231–41 (2003) (same); *EWTF*, 155 Fed. Cl. at 189–90 ("[W]hen a specific fund of money is protected by an identifiable property

_____

Breyer noted the Takings Clause has no bearing when the government imposes "an ordinary liability to pay money."  *Id.* at 554 (citations omitted).

interest, a Taking may occur.").  A specific fund of money stands in contrast to an "abstract sum of money capable of being calculated," as one's property interest in a specific fund is in the fund itself rather than in its monetary assets.  *Adams*, 391 F.3d at 1225; *see also id.* at 1224 (distinguishing between "specific funds" as "legitimate property interests" and mere "statutory obligations to pay money").  As a result, a government actor only implicates one's property interest in a specific fund when it appropriates the fund *in toto*.  *See id.*  Finding a property interest in a specific fund to be implicated when only a portion of that fund was appropriated would require recognizing a property interest in money alone, which no court may do.  *See E. Enters.*, 524 U.S. at 540 (Kennedy, J., concurring); *Edison*, 271 F.3d at 1340.  Presented with Plaintiffs' claims that the required TRP contributions amounted to takings of specific funds of money, this Court must therefore first "identify what, if anything, was the subject of the alleged taking" to determine whether the property at issue actually constituted specific funds of money.  *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d 849, 855 (Fed. Cir. 2009); *King v. United States*, 159 Fed. Cl. 450, 462 (2022).

The uncontested material facts—many of them proffered by Plaintiffs—make this a straightforward inquiry.  Neither 42 U.S.C. § 18061 nor 45 C.F.R. § 153.20(2) identified specific funds to be appropriated in their entirety.  Rather, Defendant required Plaintiffs pay sums of money as TRP contributions for three benefit years, with the amount owed calculated annually.  *See* 2d Am. Compl. ¶ 80 (providing the TRP contribution rates per covered life for 2014 ($63), 2015 ($44), and 2016 ($27)); HHS Notice of Benefit and Payment Parameters for 2014, 78 Fed. Reg. at 15,460; HHS Notice of Benefit and Payment Parameters for 2015, 79 Fed. Reg. at 13,775; HHS Notice of Benefit and Payment Parameters for 2016, 80 Fed. Reg. at 10,775.  Neither 42 U.S.C. § 18061 nor 45 C.F.R. § 153.20(2) specified from whence these contributions needed to be paid, nor

did they effect *de facto* appropriations of Plaintiffs' funds *in toto*.[10]   Absent identification of

specific funds of money taken *in toto*, the property targeted by Defendant were the sums of money

calculated for each Plaintiff annually and paid as TRP contributions.   Such "abstract sum[s] of

money" cannot be considered specific funds in which Plaintiffs have compensable property

interests under the Takings Clause of the Fifth Amendment.   *See Adams*, 391 F.3d at 1225.

Because the property Plaintiffs allege Defendant took was simply sums of money, annually

calculated, rather than specific funds, Plaintiffs have not identified a property interest appropriated

by Defendant that is cognizable under the Takings Clause.   *See E. Enters.*, 524 U.S. at 540

(Kennedy, J., concurring); *Edison*, 271 F.3d at 1338–40; *Adams*, 391 F.3d at 1225.

Plaintiffs present two arguments[11] against this conclusion, one presented in their Second

Amended Complaint and in subsequent filings, and the other presented for the first time in full at

oral argument.   Plaintiffs' first argument contends each TRP contribution was a specific fund of

---

[10] Indeed, none of Plaintiffs' three annual contributions amounted to even 1% of their annual income for the same year.   *See* 2d Am. Compl. ¶¶ 83–84 (stating OETF paid Defendant a total of $323,154 and Stone Masons paid Defendant a total of $46,777 for benefit years 2014, 2015, and 2016).   *Compare* OETF 2014 Contribution ($142,569), OETF 2015 Contribution ($107,712), *and* OETF 2016 Contribution ($72,873), *with* Mot. App. 203–14 (ECF No. 105-1) (providing OETF's total income for benefit years 2014 ($16,766,937), 2015 ($11,269,649), and 2016 ($16,974,450)); *compare* Stone Masons 2014 Contribution ($20,664), Stone Masons 2015 Contribution ($14,476), *and* Stone Masons 2016 Contribution ($11,637), *with* Mot. App. 215–26 (providing Stone Masons' total income for benefit years 2014 ($2,795,956), 2015 ($2,583,185), and 2016 ($3,204,037)).

[11] Despite this Court's direction to clarify the source of any asserted property interests, lack of clarity remained as to Plaintiffs' theories even after the filing of their two amended complaints. *See EWTF*, 155 Fed. Cl. at 193 ("To sufficiently assess Plaintiffs' Takings claim (either on a subsequently-filed motion to dismiss or a motion for summary judgment) the parties must provide the Court with further information concerning: (1) the nature of plaintiffs' property interest in their respective group health care plans, and (2) the effect, if any, the TRP had on those alleged property interests.").   Defendant's Motion to Dismiss accordingly addressed a multitude of arguments Defendant believed Plaintiffs to be making.   *See* Mot. 28–40.   In their Response to Defendant's Motion, Plaintiffs disclaimed several of the arguments discussed by Defendant and clarified the sole purported sources of cognizable property interests in this case are Plaintiffs' respective trust agreements.   Resp. at 20.   This Court accordingly addresses only the argument evinced in Plaintiffs' Response and the waived argument raised by Plaintiffs' counsel at oral argument.

money in which Plaintiffs had a property interest by virtue of the trust agreements establishing their trust funds. *See* 2d Am. Compl. ¶ 103; Resp. at 20 ("Plaintiffs clearly have an identifiable property interest in [their trust accounts' monetary assets] pursuant to the Trust Agreements."); *see also* Mot. App. 15 (OETF Trust Agreement); Mot. App. 52 (Stone Masons Trust Agreement). Plaintiffs' argument looks first to their trust agreements, which provide "[a]ll right, title and interest in and to the assets of the Plan and of the Fund shall at all times be vested in the Trustees." Mot. App. 15 (OETF Trust Agreement); Mot. App. 52 (Stone Masons Trust Agreement). Plaintiffs contend this language demonstrates they have a cognizable property interest in their trust funds and, by extension, a property interest in the monetary assets held within those trust accounts. Resp. at 14, 20–22. This reasoning leads Plaintiffs to engage in a semantic sleight of hand, using the term "funds" to reference both their trust funds themselves and those accounts' monetary assets, such that Plaintiffs' asserted property interests in their overall accounts—on Plaintiffs' theory— would purportedly extend to any sum of money contained within. *See* 2d Am. Compl. ¶ 103 ("Funds held in self-insured health and welfare trust funds constitute identifiable property interests in specific funds of money protected by the Takings Clause of the Fifth Amendment."). Plaintiffs point to "basic principles of contract and trust law," citing sources such as Restatement (Third) of Trusts (2003), to assert their trust agreements create a cognizable property interest in their trust accounts. Resp. at 20–24. However, such citations do not resolve the clear conflict between Plaintiffs' argument that an entity may possess a property interest in a sum of money held within a trust account and binding precedent prohibiting a court from finding a cognizable property interest in money alone. *See E. Enters.*, 524 U.S. at 540 (Kennedy, J., concurring); *Adams*, 391 F.3d at 1224–25.

Defendant's Motion and Reply focus on this tension, noting the property allegedly appropriated via TRP contributions was money alone rather than any specific fund.  Mot. at 23–24; Reply at 9.  Defendant characterizes Plaintiffs as effectively arguing for recognition of a general property interest in their assets, which is foreclosed by the Supreme Court's reasoning in *Eastern Enterprises*.  Reply at 9; *see E. Enters.*, 524 U.S. at 540 (Kennedy, J., concurring).  Defendant is clear to distinguish this rule from the so-called "interest follows principal" cases, "in which the Supreme Court held that states may not retain the interest earned on principal placed in an interest-bearing account."  Mot. at 30 n.7.  Those cases, including *Webb's, Phillips*, and *Brown*, are exemplars of takings of specific funds of money, and indeed the Federal Circuit cited to *Webb's* and *Phillips* when defining its use of the term "specific" in *Adams*.  391 F.3d at 1225 ("[T]he term 'specific' [means] an actual sum of money representing interest derived from ownership of particular deposits in an established account, as opposed to some abstract sum of money capable of being calculated . . . ."); *see EWTF*, 155 Fed. Cl. at 190–91 (discussing both *Webb's* and *Phillips*).  Plaintiffs, in contrast, cite *Webb's*, *Phillips*, and *Brown* to contend that any money held in trust constitutes a "specific fund," categorizing the cases as "controlling precedent" here.  While Plaintiffs are correct in casting these cases as central to this Court's analysis of the taking claims, the undisputed facts of the present case cause it to fall outside the purview of *Webb's*, *Phillips*, and *Brown*, such that even a cursory examination of those Supreme Court cases demonstrates they undermine rather than support Plaintiffs' position.  Resp. at 24–27.

In *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, the Supreme Court unanimously held an unconstitutional taking had occurred under the Fifth Amendment when a county court claimed as its own the interest accrued on an interpleader fund deposited in the registry of the county court after already assessing a fee for the service.  449 U.S. 155, 155–56 (1980).  To reach its decision,

the Supreme Court first determined whether an entity possessed a cognizable property interest in the accrued interest, stating, "[p]roperty interests . . . are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ."  *Id.* at 161 (alteration in original) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  The Supreme Court further noted that under common law the "general rule is . . . any interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal."  *Id.* at 162–63.  The deposited fund at issue in *Webb's* "plainly was private property," which was "held only for the ultimate benefit of the [receivers], not for the benefit of the court and not for the benefit of the county."  *Id.* at 160–61.  Since "interest follows principal," the fund's receivers possessed property interests in both the fund's principal and accrued interest.  *Id.* at 160–64.  As the government had identified a specific fund of money—interest on an interpleaded fund—for appropriation *in toto*, and the appropriation of that specific fund was "not reasonably related to the costs of using the courts," the Supreme Court held the retention of the interest was "a forced contribution to general government revenues" and thus amounted to a taking.  *Id.* at 163.

The Supreme Court again relied upon the "interest follows principal" rule to identify a cognizable property interest in *Phillips v. Washington Legal Foundation*.  524 U.S. 156, 172 (1998).  There, the Supreme Court examined the constitutionality of a Texas law mandating interest earned on client funds deposited into IOLTAs be paid to foundations financing legal services for low-income populations.  *Id.* at 159–60.  Applying the "interest follows principal" rule, *id.* at 165–68, the Supreme Court held interest generated by client funds in IOLTA accounts remained private property of those clients.  *Id.* at 172.  The Supreme Court also noted that the interest income transferred to Texas could not reasonably be viewed "as payment for services

rendered by the State." *Id.* at 171 (internal quotation and citation omitted). Despite holding "that the interest income generated by funds held in IOLTA accounts is the 'private property' of the owner of the principal," the Supreme Court declined to opine on whether the Texas law effected a taking demanding just compensation. *Id.* at 172. In *Brown v. Legal Foundation of Washington*, the Supreme Court reaffirmed that directing interest from IOLTA accounts to certain organizations implicates the Takings Clause of the Fifth Amendment. 538 U.S. at 216, 235, 240–41.

Each of these three cases saw a government actor identify a specific type of fund—e.g., interest earned in IOLTAs—and then appropriate that fund in its entirety. In each case, the plaintiffs complained of the taking of specific funds, rather than the imposition of obligations to pay some amount of money to the government, making the plaintiffs' property interest in those specific funds the relevant property interests for purposes of takings analyses. Plaintiffs cite to these cases to argue that money held in trust funds purportedly constitutes "specific funds of money," but Plaintiffs ignore that the plaintiffs in *Webb's*, *Phillips*, and *Brown* possessed property interests in specific funds due to the common law rule that "interest follows principal," not because funds held in trust are necessarily specific funds of money. *Webb's*, 449 U.S. at 163–64; *Phillips*, 524 U.S. at 156–57; *Brown*, 538 U.S. at 217. Plaintiffs also ignore that such property interests were only relevant because the property allegedly taken in *Webb's*, *Phillips*, and *Brown* was specific funds rather than mere sums of money. *See Webb's*, 449 U.S. at 158; *Phillips*, 524 U.S. at 162; *Brown*, 538 U.S. at 228–29.

The "interest follows principal" cases are thus controlling here, as Plaintiffs argue, but only insomuch as those cases reflect the well-established predicate for finding a property interest in a specific fund of money to be relevant to a takings analysis: the property at issue must be a fund in its entirety. *See Adams*, 391 F.3d at 1225. Whatever property interest Plaintiffs may have in their

overall trust funds is therefore immaterial here, as Plaintiffs do not contend Defendant appropriated those trust funds in their entirety. *Id.*; *see* 2d Am. Compl. at ¶¶ 83–84; c*ompare* OETF 2014 Contribution ($142,569), OETF 2015 Contribution ($107,712), *and* OETF 2016 Contribution ($72,873), *with* Mot. App. 203–14 (ECF No. 105-1) (providing OETF's total income for benefit years 2014 ($16,766,937), 2015 ($11,269,649), and 2016 ($16,974,450)); *compare* Stone Masons 2014 Contribution ($20,664), Stone Masons 2015 Contribution ($14,476), *and* Stone Masons 2016 Contribution ($11,637), *with* Mot. App. 215–26 (providing Stone Masons' total income for benefit years 2014 ($2,795,956), 2015 ($2,583,185), and 2016 ($3,204,037)).  Indeed, the contributions paid were calculated annually and did not amount to even 1% of Plaintiffs' annual income for the same year.  *See supra* note 9.  That the scope of the "funds" appropriated by Defendant can only be described in terms of a mathematical formula rather than a descriptor—such as "interest earned in IOLTAs"—further underscores how far afield this case is from those where specific funds of money were at issue.  Given the contrast between these precedential cases and the facts of the present case, this Court finds unpersuasive Plaintiffs' primary argument—that a sum money paid from a trust account is itself a specific fund.[12]

Plaintiffs' second argument was first presented at oral argument and was thus not briefed. As an initial matter, this argument was waived.  *See CardSoft v. Verifone, Inc.*, 769 F.3d 1114 (Fed. Cir. 2014) ("Arguments that are not appropriately developed in a party's briefing may be deemed waived.") (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312 (Fed. Cir. 2006) (collecting cases standing for the same proposition)).  However, even considering the merits of Plaintiffs' second argument, it fails for much the same reason as their first.  While Plaintiff's

---

[12]   This Court previously denied Plaintiffs' argument, not reasserted in its summary judgment briefing, that ERISA's "exclusive benefits provision" alone created a cognizable property interest. *EWTF*, 155 Fed. Cl. at 191.

first argument urged this Court to view any sums of money paid out of their trust accounts as "specific funds," their second argument asserts the relevant "specific funds" are actually Plaintiffs' trust accounts, from which Plaintiffs argue they were effectively required to pay their TRP contributions. *See* Trans. at 25:24–26:2 (Plaintiffs' counsel: "But here, this statute or this contribution is being required of group health plans. So by its nature it's targeting that specific fund of money."); *id.* at 21:25–22:3 (Plaintiffs' counsel: "I'm saying the federal law, which obviously the Government knows about, requires all of their assets to be held in trust."); *id.* at 30:2–10 (the Court: "So you're saying [the TRP contribution] has to by law come from the trust?" Plaintiffs' counsel: "I think by operation of this statute, yes. . . . [T]he hypothetical of a friend could pay it or a bank could pay it . . . does not give enough deference to the way this statute is written and applied . . . against a backdrop of [ERISA] that requires this money to be held this way.").

In detailing this position during oral argument, Plaintiffs' counsel attempted to distinguish *Adams* and *Eastern Enterprises* from the facts of the present case and offered as legal support only the Supreme Court's decision in *Horne v. Department of Agriculture*. 576 U.S. 350 (2015); *see* Trans. at 25:7–15. That case is inapposite to the present case. The Supreme Court in *Horne* held "an administrative reserve requirement compelling raisin growers to physically set aside a percentage of their crop for the government constituted a . . . taking." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072 (2021) (summarizing *Horne*); *Horne*, 576 U.S. at 354. Plaintiffs' counsel analogized *Horne* to the circumstances in this case, specifically Defendant's requirement that Plaintiffs pay TRP contributions while also having to hold all their assets within their trust accounts. Trans. at 25:1–11 (Plaintiffs' counsel: "What we have here is money that's already there, money that is sitting in this trust, required by federal law to be there, the only assets of the

. . . group health plans who are defined as the contributing entity, and they have to use that money. It's . . . like [*Horne* because] . . . . the growers of the raisins had a crop that they were using obviously to satisfy this government taking . . . .").  Since any payment of TRP contributions would thus be paid out of their trust accounts, Plaintiffs argue, those accounts are the relevant ones for the purpose of determining whether Defendant's actions implicated a cognizable property interest. *Id.*

Plaintiffs' argument is not persuasive.  *Horne* is not relevant here because it concerned a taking of physical, personal property, which the Supreme Court in *Sperry* confirmed is cognizable by the Takings Clause—in contrast to alleged takings of money.  493 U.S. at 62 n.9 ("It is artificial to view deductions of a percentage of a monetary award as [*per se* takings].  Unlike real or personal property, money is fungible.").  The paucity of proffered legal support for Plaintiffs' position— that one's property interest in a fund is implicated when paying the government money out of said fund—underscores its lack of viability.  Accepting Plaintiffs' argument would effectively erase the Supreme Court and Federal Circuit's distinction between takings of specific funds and obligations to pay money.  A requirement to pay a sum of money cannot be transformed into a taking of a specific fund merely because such payment may be made from a certain account, as one simply cannot have a cognizable property interest in money itself.  *E. Enters.*, 524 U.S. at 540 (Kennedy, J., concurring); *Edison*, 271 F.3d at 1338–40; *Adams*, 391 F.3d at 1225.  Such a rule is practical and necessary; as highlighted by Defendant, Plaintiffs' alternative reasoning has the potential to turn all government taxes and fees into takings of specific funds whenever it is clear they will be paid out of an individual's bank account.  Trans. at 20:18–25 (Defendant's counsel: "But in reality, when the Supreme Court talked about a specific fund of money, the focus [was] on how the statute was structured[.]  Because every assessment that is paid from a bank account is

paid from a specific fund of money.  Every tax that is paid from a bank account is paid from a specific fund of money.  A specific fund of money is always involved or almost always.").

That Plaintiffs' two arguments concerning cognizable property interests fail to persuade is not surprising given that Defendant's actions are textbook examples of the government leveling an obligation to pay calculable sums of money.  The undisputed facts of this case demonstrate the property appropriated was simply money, the amount to be paid determined by annual calculation.  *See* 2d Am. Compl. ¶ 80; HHS Notice of Benefit and Payment Parameters for 2014, 78 Fed. Reg. at 15,460; HHS Notice of Benefit and Payment Parameters for 2015, 79 Fed. Reg. at 13,775; HHS Notice of Benefit and Payment Parameters for 2016, 80 Fed. Reg. at 10,775.  Since there is no dispute that Defendant did not appropriate specific funds *in toto*, that Plaintiffs' trust agreements may provide them with property interests in the trust accounts is unavailing; the accounts were not the property allegedly taken by Defendant's mandating of TRP contributions.  Plaintiffs' arguments extending their interest in their overall trust accounts to an annually-calculated portion of the assets within those trust accounts contravene binding Supreme Court and Federal Circuit precedent holding, in the context of the Takings Clause, that individuals do not have cognizable property interests in individual sums of money.  *See E. Enters.*, 524 U.S. at 540 (Kennedy, J., concurring); *Edison*, 271 F.3d at 1340 ("[T]he mere imposition of an obligation to pay money . . . does not give rise to a claim under the Takings Clause of the Fifth Amendment.").  This Court's previous skepticism of Plaintiffs' takings claims was thus well-founded, as Plaintiffs' opportunity to amend their complaint to more precisely articulate their theory for possessing a cognizable property interest in the TRP contributions simply confirms that Defendant's mandating of contributions represented only an obligation to pay money.  *See EWTF*, 155 Fed. Cl. at 169, 191–93.

Accordingly, Plaintiffs' Takings claims fail the first step of this Court's takings analysis, as the requirement to pay TRP contributions did not implicate a cognizable property interest, but instead represented a "mere imposition of an obligation to pay money" that is not compensable under the Fifth Amendment. *Edison*, 271 F.3d at 1340.

## II.     This Court Need Not Consider Defendant's Step Two Arguments.

Defendant argues in its Motion that, should this Court find Plaintiffs have a cognizable property interest, this Court should apply a regulatory takings analysis at the second step of the two-step takings test.  Mot. at 23–26 (arguing "[P]laintiffs do not allege a *per se* taking as a matter of law").  Further, Defendant argues Plaintiffs' claims of regulatory takings accrued when the ACA was signed into law in 2010.  *Id.* at 26–27.  As Plaintiffs filed this action some 9 years later, Defendants contend Plaintiffs' regulatory takings claims are untimely under 28 U.S.C. § 2501.  *Id.* Plaintiffs counter that a *per se* takings analysis is more appropriate—although a taking also should be found under a regulatory takings analysis—and that their claims are timely, as the claims did not accrue until HHS's publication of its final rule defining "contributing entity" in 2014.  Resp. at 30–44.

Absent a constitutionally cognizable property interest in the present case under step one of the takings analysis, this Court need not proceed to step two and address the parties' disputes concerning timeliness and the type of taking that would have been at issue.  *Hearts Bluff Game Ranch*, 669 F.3d at 1329 ("First, as a threshold matter, the court determines whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking. . . . Second, if the court concludes that a cognizable property interest exists, it determines whether that property interest was 'taken.' . . . 'We do not reach this second step without first identifying a cognizable property interest.'") (quoting *Air Pegasus*, 424 F.3d at 1213);

*Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004) ("If the claimant fails to demonstrate the existence of a legally cognizable property interest, the court's task is at an end.").  This Court accordingly finds Defendant's arguments on these issues to be moot in light of this Court's findings in Discussion Section I and declines the invitation to clarify via dicta (i) the type of taking that would have occurred had Plaintiffs possessed a cognizable property interest in the money paid as TRP contributions, or (ii) whether Plaintiffs' claims under a regulatory takings analysis would have been timely.

<u>**CONCLUSION**</u>

For the reasons explained above, Defendant's Motion for Partial Summary Judgment (ECF No. 105) is **GRANTED**.  Plaintiffs' Motion for Leave to File to Amend Takings Class Definition in the Second Amended Complaint (ECF No. 83) and Motion to Certify Takings Class (ECF No. 84) are accordingly **DENIED AS MOOT**.

The parties are directed to **CONFER** and **FILE** a Notice within seven days, attaching a proposed public version of this Memorandum and Order, with any competition-sensitive or otherwise protected information redacted.

The Clerk of Court is **DIRECTED** to enter Judgment accordingly.

IT IS SO ORDERED.

*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

July 7, 2023
Washington, D.C.

27