# In the United States Court of Federal Claims

|  |  |
|---|---|
| ELECTRICAL WELFARE TRUST FUND, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 19-cv-353<br><br>Filed: May 16, 2024 |

*Joseph Howard Meltzer* and *Melissa L. Yeates*, Kessler, Topaz, Meltzer & Check, LLP, Radnor, Pennsylvania for Plaintiffs. With them on the briefs were, *Jonathan F. Neumann*, *Jordan E. Jacobson*, Kessler, Topaz, Meltzer & Check, LLP, Radnor, Pennsylvania; and *Charles F. Fuller*, McChesney & Dale, P.C., Rockville, Maryland.

*Borislav Kushnir*, Trial Attorney, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C. for Defendant. With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Washington, D.C.; *Patricia M. McCarthy*, Director, United States Department of Justice, Civil Division, Washington, D.C.; *Eric P. Bruskin*, Assistant Director, United States Department of Justice, Civil Division, Washington, D.C.; *Kenneth Whitley*, Attorney, United States Department of Health and Human Services, Office of the General Counsel, Washington, D.C.; and *Robert Balderston*, Attorney, United States Department of Health and Human Services, Office of the General Counsel, Washington, D.C.

## MEMORANDUM AND ORDER

Pending before this Court are (i) Electrical Welfare Trust Fund's (EWTF's) Motion for Final Approval of Settlement and Plan for Allocating Net Settlement Fund to Exaction Class Members (ECF No. 144) (Mot. Approval Settlement), and (ii) Class Counsel's Motion for an Award of Attorneys' Fees, Expenses, and Case Contribution Award to Class Representative (ECF No. 145) (Fees Motion). Specifically, the parties seek approval of a Settlement Agreement that would award the Exaction Class $169,022,397.28 (inclusive of all damages, attorneys' fees and out of pocket expenses, and all administrative fees and costs), constituting a 91.25% recovery of

the Exaction Class's recoverable damages.  Class Counsel's Motion seeks (i) an award of attorneys' fees constituting 25% of the settlement amount, net of expenses, or $42,120,941.38, (ii) reimbursement of its expenses in the amount of $513,631.77, as related to Class Counsel's representation of the Exaction Class, and (iii) a $25,000 case contribution award to the lone Class Representative in this action, EWTF.  The Motions are unopposed and no person or entity objects in whole or in part to the Settlement Agreement, to the proposed award of attorneys' fees and expenses to Class Counsel, or to the proposed case contribution award to Class Representative EWTF.

On May 1, 2024, the Court conducted a Fairness Hearing related to the proposed Settlement Agreement and Motion.  Order, dated February 21, 2024 (ECF No. 143) (February 21, 2024 Order) at 2.  This Court has an obligation to scrutinize both the proposed Settlement Agreement and the awards Class Counsel seeks in its Motion, to ensure the agreement and requested awards are fair, reasonable, and adequate.  Based on the information provided to the Court—including the proposed Settlement Agreement, the Notice sent to the Exaction Class, the parties' Motions and related briefing, and declarations from class members, along with the representations made at the Fairness Hearing—the Court is satisfied that the settlement is fair, reasonable, and adequate, and appropriately accounts for the interests of all parties in accordance with both Rule 23(e) of the Rules of the United States Court of Federal Claims (Rules) and the fairness factors that this Court has historically considered.  Moreover, based on the noted filings and declarations, as well as the parties' representations made during the Fairness Hearing, this Court is also satisfied that Class Counsel's requested award of attorneys' fees and expenses, and the proposed case contribution award to Class Representative EWTF are fair, reasonable, and accord with Rule 23(h) and relevant jurisprudence.

For the reasons set forth below, and as stated on the record during the Fairness Hearing, EWTF's Motion for Final Approval of Settlement and Plan for Allocating Net Settlement Fund to Exaction Class Members (ECF No. 144) is **GRANTED**, and Class Counsel's Motion for an Award of Attorneys' Fees, Expenses, and a Case Contribution Award to Class Representative EWTF (ECF No. 145) is **GRANTED**.

## BACKGROUND

Electrical Welfare Trust Fund (EWTF or Class Representative) filed this action on March 8, 2019,[1] alleging illegal exaction and Fifth Amendment Takings claims against Defendant arising from payments that Plaintiffs were required to make into the Patient Protection and Affordable Care Act of 2010 (ACA) Transitional Reinsurance Program (TRP) for the 2014 plan year.[2] Complaint (ECF No. 1) (Compl.) ¶¶ 89–111; Second Amended Class Action Complaint (ECF No. 59) ¶¶ 101–27.  The proposed Settlement Agreement at issue pertains only to the illegal exaction claims.  Mot. Approval Settlement at 7 n.4.

---

[1] Plaintiffs began to pursue their illegal exaction claim in other courts as early as 2016.  Declaration of Joseph H. Meltzer, dated March 27, 2024 (ECF Nos. 144-1, 145-1) (Meltzer Declaration or Meltzer Decl.) ¶¶ 14–36 (detailing the history of Plaintiffs' litigation); *see also* Oral Argument Transcript, dated May 1, 2024 (ECF No. 149) (OA Tr.) at 11:18–22 (Class Counsel: "The action was initially filed in the District of Maryland in 2016, and went through proceedings there, as well as the Fourth Circuit, before being filed in this Court in 2017, and then again in 2019, after some procedural changes.").

[2] Plaintiffs Operating Engineers Trust Fund of Washington, D.C. (OETF) and Stone & Marble Masons of Metropolitan Washington, D.C. Health and Welfare Fund (Stone Masons) also filed suit.  Complaint (ECF No. 1).  However, the Court granted Defendant's Motion to Dismiss as related to OETF's and Stone Mason's illegal exaction claims.  *See* Defendant's Motion to Dismiss or in the Alternative, Motion for Summary Judgment (ECF No. 6); *Elec. Welfare Tr. Fund v. United States*, 155 Fed. Cl. 169, 193 (2021).  Plaintiffs OETF and Stone Masons separately continued to pursue their Fifth Amendment Takings claims, which this Court dismissed on July 7, 2023.  *Elec. Welfare Tr. Fund v. United States*, 166 Fed. Cl. 709, 723 (2023).  As noted above, those claims, which remain on appeal to the U.S. Court of Appeals for the Federal Circuit, are not part of the proposed settlement or the proposed attorneys' fees and expenses at issue in the present Motions.  OA Tr. at 26:11–27:16.

Throughout the course of this litigation, this Court has issued several opinions, familiarity with which is presumed.  *See e.g.*, *Elec. Welfare Tr. Fund v. United States*, No. 19-cv-353, 2023 WL 3409608 (Fed. Cl. May 12, 2023); *Elec. Welfare Tr. Fund v. United States*, 160 Fed. Cl. 462 (2022); *Elec. Welfare Tr. Fund v. United States*, 155 Fed. Cl. 169, 184 (2021).  By way of brief background, this case arises out of the Department of Health and Human Services' (HHS's) implementation of the ACA.  Settlement Agreement ¶ 2; *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 173.  Plaintiffs in this class action are self-administered, self-insured employee health and welfare benefit plans seeking to recover amounts paid to Defendant under former HHS regulations implementing the ACA's TRP.  As reflected in this Court's prior opinions, contrary to the plain language of the ACA, HHS promulgated a rule requiring certain self-administered, self-insured employee health and welfare benefit plans to make TRP contributions for the 2014 benefit year. *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 182–84; *see also* 42 U.S.C. § 18061(b)(1)(A); 45 C.F.R. § 153.20(2) (2019) ("[Contributing entity means f]or the 2014 benefit year, a self-insured group health plan ... whether or not it uses a third party administrator; and for the 2015 and 2016 benefit years, a self-insured group health plan ... that uses a third party administrator ....").

On July 30, 2021, this Court declined to dismiss EWTF's illegal exaction claim, but dismissed the illegal exaction claims of other plaintiffs that had used a third-party administrator and were not self-administered, self-insured employee health and welfare benefit plans.  *See* Defendant's Motion to Dismiss or in the Alternative, Motion for Summary Judgment (ECF No. 6); *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 174.  Specifically, this Court ruled that HHS's inclusion of self-administered, self-insured employee health and welfare benefit plans within the agency's definition of "contributing entity" was contrary to the plain language of 42 U.S.C. § 18061(b)(1)(A).  *Id.*  Indeed, the Court noted that despite HHS's acknowledgement that its

4

interpretation of Section 1341 was not a natural reading of the statute, HHS nevertheless declined to reimburse Plaintiffs for their 2014 TRP contributions because, in HHS's view, reversing course to adhere to the plain language of the statute would be administratively difficult. *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 183–84. HHS's actions and refusal to refund self-administered, self-insured employee health and welfare benefit plans' 2014 TRP contributions was arbitrary and capricious, and contrary to law. OA Tr. at 5:18–23; *see also Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 183–84. Indeed, HHS lacked authority to ignore the plain language of the statute in the name of its preferred public policy or for administrative efficiency purposes. *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 183–84.

On April 8, 2022, EWTF moved to certify a class of entities alleging illegal exaction. Plaintiff the Electrical Welfare Trust Fund's Motion for Class Certification, Appointment as Class Representative, and Appointment of Class Counsel (ECF No. 53) at 1; Memorandum of Law in Support of Plaintiff the Electrical Welfare Trust Fund's Motion for Class Certification, Appointment as Class Representative, and Appointment of Class Counsel (ECF No. 53-1) at 7. On June 22, 2022, this Court certified the following class:

> All self-administered, self-insured employee health and welfare benefit plans that are or were subject to the assessment and collection of the Transitional Reinsurance Contribution under Section 1341 of the Affordable Care Act for benefit year 2014 (the "Exaction Class" or "Class").

*Elec. Welfare Tr. Fund*, 160 Fed. Cl. at 469–70. In accordance with Rule 23, the Court also determined EWTF and Class Counsel would fairly and adequately represent the Class. *Id.* at 468–69. Following class certification, Class Counsel engaged in a notice campaign to approximately 650 plans identified via Government records as potential self-administered, self-insured employee health and welfare benefit plans that had made a TRP payment to Defendant for the 2014 plan

year.  Order Directing Entry of Judgment Pursuant to Rule 54(b) (ECF No. 123) (Order Directing 54(b) Judgment) at 2 (citing ECF Nos. 111, 92, 87-1).

During this opt in period, EWTF and the Exaction Class also moved for summary judgment on its illegal exaction claim.  *See* EWTF's Motion for Summary Judgment on the Illegal Exaction Claim (ECF No. 72).  During oral argument on that motion, Defendant acknowledged that no disputes of material fact remained and further stated its belief that the Court had already resolved the relevant legal issues in its Memorandum and Order denying Defendant's Motion to Dismiss. Oral Argument Transcript, dated Dec. 21, 2022 (ECF No. 100) at 4:16–5:8 (additionally noting that Defendant continued to object to the Court's denial of its Motion to Dismiss).   Accordingly, on December 21, 2022, this Court granted EWTF's Motion for Summary Judgment and stated its intent to direct entry of Judgment on the Class's illegal exaction claim pursuant to Rule 54(b). Order, dated December 21, 2022 (ECF No. 97) at 1.

On February 2, 2023, Class Plaintiffs filed an initial Certification of Final Membership in the Exaction Class (ECF No. 106), and on February 10, 2023, Class Plaintiffs filed a Supplemented Certification of Final Membership in the Exaction Class (ECF No. 111) (Supplemented Certification), including an exhibit listing a final Exaction Class membership of 357 entities and the amount due to each entity.  *See* Exhibit A to Supplemented Certification (ECF No. 111-1) (Final Certification List); *see also* Order (ECF No. 97) at 1 ("[T]he certification of final Class membership . . . shall contain the name and damages owed to each member of the Illegal Exaction Class.").

On February 10, 2023, Plaintiffs requested entry of judgment related to 357 members of the Exaction Class.  Supplemented Certification at 4.  On May 11, 2023, after a professionally-conducted meet and confer process, the parties reached an agreement concerning membership of

the Exaction Class and the amount owed to each class plaintiff.  Rule 54(b) Judgment (ECF No. 124) at 3 (citing Oral Argument Transcript, dated May 11, 2023 (ECF No. 126)) ("Class Counsel confirmed on the record that the parties agreed that Judgment should be entered for the 357 members of the Exaction Class.  The parties do not dispute the amount owed by Defendant in total or to each Exaction Class member.").

On May 12, 2023, the Court directed the Clerk of Court to enter partial Judgment pursuant to Rule 54(b) in favor of the Exaction Class in the total amount of $185,230,024.42, or 100% of the Exaction Class's damages.  Order Directing 54(b) Judgment at 4; *see also* Final Certification List (listing each Class Member and their respective distribution of damages).  The final Exaction Class includes 357 self-administered, self-insured plans, all of which opted in to the Exaction Class, and all of which the Court accepted.  *See* Exhibit to Rule 54(b) Judgment (ECF No. 124); Order Directing Rule 54(b) Judgment at 3 ("This Court has thoroughly reviewed the parties' briefs, exhibits, and arguments as to the now-unopposed request for entry of Judgment related to the 357 members of the Exaction Class, and finds that there is good cause shown to enter Judgment in favor of such Exaction Class members."); Exhibit A to Settlement Agreement (ECF No. 142-1).

On June 26, 2023, Defendant filed a Notice of Appeal of the Court's 54(b) Judgment in favor of the Exaction Class.  Defendant's Notice of Appeal (ECF No. 128); *see also* Rule 54(b) Judgment.  Subsequently, the parties engaged in settlement discussions and resolved all claims brought by the Exaction Class.  *See* Mot. Approval Settlement at 11.  Accordingly, on December 20, 2023, the United States Court of Appeals for the Federal Circuit remanded this case to this Court for finalization of the parties' settlement agreement.  Order, dated December 20, 2023 (ECF No. 138) at 2.

## I.     <u>Subsequent Procedural History in the Court of Federal Claims</u>

On December 20, 2023, this Court ordered the parties to file a Joint Status Report providing a proposed joint schedule for future proceedings, and on January 4, 2024 the parties did so, stating their intent to file a proposed settlement agreement and proposing a schedule for future proceedings with the Court.  Order, dated December 20, 2023 (ECF No. 139) at 1; JSR, dated January 4, 2024 (ECF No. 140) at 1–2.

On February 16, 2024, Class Representative EWTF filed an Unopposed Motion for Preliminary Approval of Settlement and Authorization to Disseminate Notice of Settlement.  ECF No. 142 (Prelim. Mot. Approval Settlement); Proposed Settlement Agreement, dated February 16, 2024 (ECF No. 142-1).  On February 21, 2024, the Court preliminarily approved the proposed Settlement Agreement "as fair, reasonable, and adequate and in the best interest of the Settlement Class."  February 21, 2024 Order at 1.  The Court also approved the proposed notice to class members and set relevant deadlines, including for the deadlines for motions now pending before this Court and for class members to lodge objections.  *Id.* at 1–3.

On March 27, 2024, Class Representative EWTF filed the pending Motion for Final Approval of the Settlement and Plan for Allocating Net Settlement Fund to Exaction Class Members (ECF No. 144), and Class Counsel filed a Motion for an Award of Attorneys' Fees, Expenses, and Case Contribution Award to Class Representative (ECF No. 145).

On April 24, 2024, EWTF filed a Reply in further support of the pending motions, certifying that none of the 357 Class Members had filed an objection to the Settlement Agreement or Motion.  Reply Submission in Further Support of (I) Motion for Final Approval of Settlement and Plan for Allocating Net Settlement Fund to Exaction Class Members; and (II) Motion for an Award of Attorneys' Fees, Expenses, and Case Contribution Award to Class Representative (ECF

No. 146) (EWTF Reply) at 5; *see also* February 21, 2024 Order at 2 ("Any objections to the Settlement Agreement and/or Class Counsel's Motion for an Award of Attorneys' Fees, Litigation Expenses and Case Contribution Award shall be filed with the Court, with copies provided to Class Counsel and Defendant's counsel, no later than twenty-one (21) calendar days prior to the date of the Fairness Hearing.").

On April 30, 2024, Class Counsel filed a Supplemental Brief and Declaration of the General Counsel for 1199SEIU Benefit & Pension Funds, which include the 1199SEIU National Benefit Fund for Health and Human Service Employees, 1199SEIU Greater New York Benefit Fund, and 1199SEIU Home Care Employees Benefit Fund (collectively, 1199SEIU Funds), and whose collective TRP Contribution of $15,531,264 represents the largest of the Exaction Class members.  Supplemental Submission in Further Support of (I) Motion for Final Approval of Settlement and Plan for Allocating Net Settlement Fund to Exaction Class Members; and (II) Motion for an Award of Attorneys' Fees, Expenses, and Case Contribution Award to Class Representative (ECF No. 147) (Class Counsel's Supplemental Brief) at 2–3; Declaration of Suzanne Metzger, dated April 30, 2024 (ECF No. 147-1) (Metzger Declaration or Metzger Decl.) ¶¶ 1, 5.  On May 1, 2024, this Court conducted a public, noticed Fairness Hearing, at which no member of the Exaction Class sought to participate.  *See* February 21, 2024 Order at 2.  Further, no member of the Exaction Class – or any other person or entity – lodged an objection to the Settlement Agreement or Motion.

## II.    The Terms of the Settlement Agreement

The parties have agreed to settle the Exaction Class's claims against the Government for a **$169,022,397.28** cash payment, inclusive of all damages, attorneys' fees and out of pocket expenses, and all administrative fees and costs.  Settlement Agreement ¶ 13.  The proposed

settlement includes **91.25%** of the Exaction Class's recoverable damages, before deduction of fees and costs.  *Id.* ¶ 12.

The Settlement Agreement states that Administrator fees or costs, attorneys' fees and costs, any case contribution award, administrative fees and costs, and any other settlement-related costs (collectively Settlement Fees and Costs) will first be deducted from the total Settlement Amount and charged to the Exaction Class on a *pro rata* basis.  *Id.* ¶ 19.  Thereafter, the Exaction Class will receive a prorated portion of the remaining amount (the Net Settlement Fund) in the form of a check or electronic transfer, "based on the TRP contributions associated with each Settlement Class Member, less *a pro rata* portion of Settlement Fees and Costs."  *Id.* ¶¶ 20, 21.

## DISCUSSION

### I.   Final Approval of Settlement and Plan for Allocating Net Settlement Fund to Exaction Class Members

First, the Court must determine whether the proposed Settlement is fair, reasonable, and adequate under Rule 23, and whether the proposed plan for equitably distributing the Net Settlement Fund to Exaction Class members is fair and reasonable.  For the reasons addressed below, EWTF's Motion for Final Approval of Settlement and Plan for Allocating Net Settlement Fund to Exaction Class Members (ECF No. 144) is **GRANTED**.

#### A.  Legal Standard

Rule 23(e) governs the approval of settlement agreements in certified class actions.  Rule 23(e) states "claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval."  Rule 23(e).

In practice, Rule 23(e) includes a two-step approval process for the Court.  *See Furlong v. United States*, 131 Fed. Cl. 548, 550 (2017) (quoting *Lambert v. United States*, 124 Fed. Cl. 675,

677 (2015)) (internal quotations omitted).  In the first step, the Court "review[s] the proposed settlement for a preliminary fairness evaluation and direct[s] notice of the [proposed] settlement to be provided to the class."  *Id.*  Second, following notice and a fairness hearing, the Court determines whether to grant final approval of the proposed settlement.  *Id.*

The Court "may approve [the settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate."  Rule 23(e)(2).  To determine whether the proposed Settlement Agreement is "fair, reasonable, and adequate," the Court "looks to the 'paramount' twin elements of procedural and substantive fairness."  *Courval v. United States*, 140 Fed. Cl. 133, 139 (2018) (citing *Christensen v. United States*, 65 Fed. Cl. 625, 629 (2005) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73–74 (2d Cir. 1982) ("Determination whether a proposed class action settlement is fair, reasonable, and adequate involves consideration of two types of evidence. The primary concern is with the substantive terms of the settlement ... [and,] to supplement the ... necessarily limited examination of the settlement's substantive terms, attention also has been paid to the negotiating process by which the settlement was reached.") (citation omitted))).

These procedural and substantive fairness considerations are encompassed both in Rule 23(e)(2) and in additional factors historically considered by the Court.  Rule 23(e)(2) requires courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;

> (B)  the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into account:

>> (i) the costs, risks, and delay of trial and appeal;

>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under [Rule] 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2)(A)–(D).

To that end, judges of the Court of Federal Claims have often considered additional factors in a manner consistent with those detailed in Rule 23(e)(2):

(i) the relative strengths of plaintiff's case compared to the proposed settlement; (ii) the recommendation of the counsel for the class regarding the proposed settlement, taking into account the adequacy of class counsels' representation of the class; (iii) the reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement terms; (iv) the fairness of the settlement to the entire class; (v) the fairness of the provision for attorney fees; and (vi) the ability of the defendants to withstand a greater judgment, taking into account whether the defendant is a governmental actor or a private entity.[3]

*Mercier v. United States*, 156 Fed. Cl. 580, 586 (2021) (quoting *Dauphin Island Prop. Owners Ass'n v. United States*, 90 Fed. Cl. 95, 102 (2009)); *Quimby v. United States*, 107 Fed. Cl. 126, 130 (2012); *Sabo v. United States,* 102 Fed. Cl. 619, 627 (2011); *Berkley v. United States*, 59 Fed. Cl. 675, 681–82 (2004). "The Court has considerable discretion regarding the weight to afford each factor given the factual context of the particular case before it." *Sabo*, 102 Fed. Cl. at 627

---

[3] The United States Court of Federal Claims recently amended its Rules to include the Rule 23(e)(2) factors, but such factors do not displace those previously adopted. Mot. Approval Settlement at 13 n.8 (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment) ("[T]he advisory committee notes to the 2018 Amendments to Federal Rule of Civil Procedure 23 explain that the four Rule 23(e)(2) factors are not intended to 'displace' any factor previously adopted by the courts, but 'rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'"). Several of Rule 23(e)(2)'s factors overlap with those the Court of Federal Claims has historically considered. Non-duplicative factors to the Rule 23(e)(2) factors are addressed in Section I(C)(e) of this Memorandum and Order.

(citing *Barnes*, 2010 WL 1904503, at *2 (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993))).

**B.** **Fair Notice Was Provided to the Exaction Class**

As an initial matter, the Court finds that the notice of settlement sent to the Exaction Class comports with this Court's requirements and due process.  Rule 23(e)(1) sets forth the standard for notice to the Class and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Rule 23(e)(1)(B).  The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Haggart v. Woodley*, 809 F.3d 1336, 1348–49 (Fed. Cir. 2016) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also* Rule 23(c)(2)(B) ("For any class certified under RCFC 23(b)— or upon ordering notice under RCFC 23(e)(1) to a class proposed to be certified for purposes of settlement under RCFC 23(b)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice may be by one or more of the following:  United States mail, electronic means, or other appropriate means.").

When granting EWTF's Unopposed Motion for Preliminary Approval of Settlement and Authorization to Disseminate Notice of Settlement, the Court also approved the Notice of Class Acton Settlement (Notice) sent to the Exaction Class.  *See* Exhibit 2 to Prelim. Mot. Approval Settlement (ECF No. 142-2).[4]

---

[4] The Notice provides information about why the Notice has been sent; an explanation of the lawsuit; the terms of the Settlement; the payment amount, timing, and method of calculation; information about Class Counsel representation, including notice that Class Counsel will request expenses and attorneys' fees not to exceed 25% of the Gross Settlement Fund; Class Counsel's intent to request a case contribution award for EWTF not to exceed $50,000; the class member's

Consistent with this Court's Order, JND Legal Administration (JND) e-mailed the Notice to each respective Exaction Class member at the address provided during the opt-in notice campaign. Declaration of Luiggy Segura, dated March 26, 2024 (ECF Nos. 144-1, 145-1) (Segura Declaration or Segura Decl.) ¶¶ 3–11. 342 of the 357 emails sent were confirmed as delivered. *Id.* ¶ 10. A total of 15 emails were returned as undeliverable. *Id.* ¶ 11. Accordingly, JND sent the Notice via first-class overnight mail to those 15 class members, resulting in successful delivery. Mot. Approval Settlement at 26 n.14 (citing Segura Decl. ¶¶ 10–11); *see also* Prelim. Mot. Approval Settlement at 20. In addition, JND displayed on a dedicated internet website (www.TRPLitigation.com/exaction) all pertinent documents, including but not limited to the (i) Notice of the Class Action Settlement; (ii) the operative Complaint; (iii) the Settlement Agreement; and (iv) the Court's Order granting Plaintiff's Unopposed Motion for Preliminary Approval of Settlement and Authorization to Disseminate Notice of Settlement. *ACA TRP Litigation- Exaction Class*, JND LEGAL ADMIN., https://www.trplitigation.com/documents (last visited April. 30, 2024). JND also established a dedicated email address, info@TRPLitigation.com, for Exaction Class inquiries. Segura Decl. ¶ 15. As detailed above, following the notice period, EWTF certified that none of the 357 Class Members filed objections. EWTF Reply at 5. Further, during the Fairness Hearing, Class Counsel stated on the record that no formal or informal objections had been received, noting "[a]dequate notice was provided to the 357 class members through email addresses that they provided during the opt-in process, as well as by direct mail." OA Tr. at 15:11–13; *see also id.* at 16:12–21. Defendant likewise confirmed that it had no concerns about the Notice. *Id.* at 19:23–25 ("Understanding the process that class counsel has undertaken with respect

___

rights and options under the Settlement; the date of the Fairness Hearing; and relevant contact information. *See* Exhibit 2 to Prelim. Mot. Approval Settlement.

to notice, we don't have any concerns about that either.").  Defendant further confirmed at the
Fairness Hearing that no person or entity had objected, formally or informally to the Settlement
Agreement or pending Motions.  *Id*. at 18:5–12.

Accordingly, based on the information provided to the Court and representations of
counsel, the Court concludes that fair notice of the proposed settlement has been provided to the
Exaction Class.

### C. **The Proposed Settlement is Fair, Reasonable, and Adequate**

#### a. **The Adequate Representation by the Class Representative and Class Counsel Favor Approving the Settlement**

Next, the Court must consider whether the Settlement Agreement is fair, reasonable, and
adequate.  Rule 23(e)(2)(A) requires the Court to first consider whether the Class Representative
and Class Counsel adequately represented the Exaction Class in this action.[5]  Rule 23(a)(4)
includes an adequacy requirement as a prerequisite to initiating a class action in this Court.  Rule
23(a)(4) ("One or more members of a class may sue as representative parties on behalf of all
members only if . . . (4) the representative parties will fairly and adequately protect the interests of
the class.").

In its prior Order certifying the Exaction Class, the Court initially concluded that "EWTF
and its counsel will provide adequate representation of the proposed class's interests."[6]  *Elec.*

---

[5] Rule 23(e)(2)(A) overlaps with the second factor historically considered by the Court, as
discussed *supra* in note 3.  *Quimby*, 107 Fed. Cl. at 130 ("(ii) the recommendation of the counsel
for the class regarding the proposed settlement, taking into account the adequacy of class
counsel['s] representation of the class").

[6] In making this determination, the Court previously considered and was satisfied with: "(i) the
work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's
experience in handling class actions, other complex litigation, and the types of claims asserted in
the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will

*Welfare Tr. Fund*, 160 Fed. Cl. at 469.  Several examples in the pending Motion and declarations reaffirm and support that EWTF and Class Counsel have more than adequately represented the Exaction Class.  *See e.g.*, Mot. Approval Settlement at 14 (citing Declaration of Michael McCarron, dated March 25, 2024 (ECF Nos. 144-1, 145-1) (McCarron Declaration or McCarron Decl.) ¶¶ 7–11) ("Here, EWTF has diligently supervised and participated in the Action and through its efforts, has provided valuable and meaningful assistance and direction to Class Counsel . . . [including] communicating regularly with Class Counsel, reviewing and commenting on all material Court submissions and other case documents, participating in discovery, including responding to Defendant's document requests (searching for and producing potentially relevant documents) and interrogatories, and following the negotiations leading to the Settlement and authorizing entry into the same."); *id.* at 15 (citing Meltzer Decl. ¶¶ 9–121) ("Class Counsel . . . investigated and pioneered the theory of liability in this complex and novel case, litigated the Exaction Class's claims for years (in multiple courts) through many successes (i.e., defeating Defendant's motion to dismiss, obtaining certification of a class, obtaining summary judgment in the Exaction Class's favor, and securing the Judgment for 100% of the Exaction Class's damages), and negotiated the outstanding Settlement.").  Further, and as noted below, the Court has viewed Class Counsel's actions throughout this litigation and finds that Class Counsel has acted with thoroughness and diligence in representing the Exaction Class.  Accordingly, this Court finds that the Class Representative, EWTF, and Class Counsel adequately represented the Exaction Class in this action.

---

commit to representing the class." *Elec. Welfare Tr. Fund*, 160 Fed. Cl. at 469 (citing Rule 23(g)(1)(A)).

**b.** <u>**The Proposal's Arm's Length Negotiation Favors Approving the Settlement**</u>

The Court also must consider whether the proposal was negotiated at arm's length. Rule 23(e)(2)(B); *see also Quimby*, 107 Fed. Cl. at 131 (noting that the proposed settlement agreement was "reached after extensive arm's length negotiations carried out by experienced class counsel").

Here, as the parties note, highly experienced counsel negotiated the proposed settlement after extensive litigation had occurred, including securing a judgment at the trial court level in favor of the Exaction Class, and representing the class during the pendency of the appeal of that judgment. Mot. Approval Settlement at 16; OA Tr. at 14:4–7. Throughout this action's lengthy history, EWTF and Class Counsel gained extensive experience and understanding of the "strengths and risks" associated with the Exaction Class's case. Mot. Approval Settlement at 16; *see also* Meltzer Decl. ¶¶ 9–112. This knowledge was at EWTF and Class Counsel's disposal during the parties' several weeks of settlement negotiations, and useful in ultimately reaching the Proposed Settlement. Meltzer Decl. ¶¶ 9–49 (Class Counsel began to research the Exaction Class's claims in 2015 and pursued this claim in the District of Maryland, appealed to the Fourth Circuit, and filed in this Court twice); *id.* ¶¶ 40–49 (opposing and defeating Defendant's Motion to Dismiss as it pertained to the Exaction Class); *id.* ¶¶ 50–70, 77–79 (engaging in extensive discovery, negotiations, and meet and confers with the Government); *id.* ¶¶ 80–84 (securing class certification for the Exaction Class); *id.* ¶¶ 85–95 (overseeing a thorough notice and opt-in campaign, including securing an extension from the Court over the objection of the Government, in order to ensure potential class members were aware of this action); *id.* ¶¶ 96–107 (evaluating the 634 opt-in forms received and ultimately successfully certifying 357 plans to the Court, over the Government's initial objections); *id.* ¶¶ 107–12 (successfully obtaining summary judgment and securing judgment for 100% of the Exaction Class's damages); *id.* ¶¶ 114–20 (engaging in settlement

17

negotiations while the Government's appeal was pending, which included several proposals and counterproposals that required Class Counsel to assess the strengths and weaknesses of proceeding on appeal).

Accordingly, the Court is satisfied that the parties' Settlement Agreement "resulted from arms-length negotiations" and represent "effective representation of the class's interest." *Mercier*, 156 Fed. Cl. at 585 (quoting *Courval*, 140 Fed. Cl. at 139).

### c. **The Adequate Relief Provided to the Exaction Class Favors Approving the Settlement**

In evaluating whether the relief provided to the Exaction Class is adequate under Rule 23(e)(2)(C), courts consider the following factors:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under [Rule] 23(e)(3).

Rule 23(e)(2)(C).[7]  As explained below, the proposed relief provided to the Exaction Class is adequate and favors approving the proposed settlement.

---

[7] Rule 23(e)(2)(C) overlaps with the first factor historically considered by the Court and discussed in note 3 above.  *Quimby*, 107 Fed. Cl. at 130 ("(i) the relative strengths of plaintiff's case compared to the proposed settlement").  In evaluating the relative strength of a plaintiff's case, the Court takes the following into account:

> (a) The complexity, expense and likely duration of the litigation; (b) the risks of establishing liability; (c) the risks of establishing damages; (d) the risks of maintaining the class action through trial; (e) the reasonableness of the settlement fund in light of the best possible recovery; (f) the reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation; [and] (g) the stage of the proceedings and the amount of discovery completed....

*Sabo*, 102 Fed. Cl. at 627 (quoting *Dauphin Island Prop. Owners Ass'n, Inc*., 90 Fed. Cl. at 102–03).

### 1.   **The Costs, Risks, and Delay of Trial and Appeal**

Rule 23(e)(2)(C)(i) supports final approval of the Settlement Agreement, as settlement avoids additional expense, further delay, and the litigation risk the Exaction Class would face in light of Defendant's pending appeal. *Mercier*, 156 Fed. Cl. at 586. The Court recognizes that the Exaction Class made its TRP contributions to Defendant nearly ***ten years ago***. Here, as the parties note, the case before this Court has moved through every stage of proceedings, including fulsome briefing, oral argument, discovery, issuance of a thorough Memorandum and Order, and ultimately Judgment in favor of the Exaction Class, and appeal of that Judgment. Mot. Approval Settlement at 20. Recognizing this, Class Counsel notes that although they are confident in success upon appeal, litigation is not without risk and the appeal process could include several years of ongoing litigation. *Id.* at 18–19; *see also* OA Tr. at 12:20–25 ("[$169,022,397.28] is a significant recovery for the class and a small reduction of the $185 million judgment that Your Honor awarded. It is merely reduced to account for the risk and delay associated with the Government's appeal of that judgment."). Accordingly, taking into account the costs, litigation risks, and additional delay in payment associated with an appeal, this Court agrees with the parties that "Class Counsel and Class Representative had more than enough information to make an informed decision regarding settlement." Mot. Approval Settlement at 20.

### 2.   **The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims**

The parties' proposed distribution method treats all Exaction Class members the same, as the Net Settlement Fund will be distributed to the Exaction Class in proportion to their respective TRP contribution less *a pro rata* portion of Settlement Fees and Costs. Settlement Agreement ¶¶ 20, 21; *see also* OA Tr. at 14:16–21 ("The distribution method is fair and equitable. It's a *pro rata* distribution based on each class member's TRP contribution. Each class member is treated in an

equitable manner and received a payment that is in line with their relative losses as compared to the other class members.").

Accordingly, the Court is satisfied that this proposed method of distributing the Net Settlement Fund is effective and ensures equitable treatment of Exaction Class members in accordance with Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(D).

### 3. The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment

The Settlement Amount of $169,022,397.28 is inclusive of all damages, attorneys' fees, out of pocket expenses, and administrative fees and costs.  Settlement Agreement ¶ 13.  Although the Settlement Agreement itself does not include the terms of any proposed award of attorneys' fees, the parties' agreement states that JND will pay any Court approved attorneys' fees within 15 days of receiving the Settlement Amount.  *Id.* ¶ 19.  As described above, any attorneys' fees are a component of the Settlement Fees and Costs charged to the Exaction Class members on a *pro rata* basis.  *Id.*

In addition to approval of the Settlement Agreement, Class Counsel requests the Court grant its motion for an award of attorneys' fees of 25% of the settlement, net of expenses.  *See* Mot. Fees at 9.  As discussed below, not only is such an award of attorneys' fees in this action fair, reasonable, and adequate, but it is also supported by Exaction Class members, without objection, in consideration of the significant recovery secured.[8]  *See infra* Section II.  Indeed, at the Fairness Hearing, Class Counsel averred that under the Settlement Agreement, Exaction Class members

---

[8] Rule 23(e)(2)(C)(iii) overlaps with the fifth factor historically considered by the Court, as discussed in note 3 above.  *Quimby*, 107 Fed. Cl. at 130 ("(v) the fairness of the provision for attorney fees").

will each recover on average more than $350,000, net of fees and expenses, with 182 plans receiving more than $100,000, and 30 plans receiving more than $1 million.  OA Tr. at 15:4–10.

### 4.   Any Agreement Required to be Identified under Rule 23(e)(3)

The Proposed Settlement Agreement is the only agreement made in connection with this action.  Mot. Approval Settlement at 23.  Therefore, there are no additional agreements required to be identified under Rule 23(e)(3).

### d.   The Proposal Treats Class Members Equitably Relative to Each Other

As noted above, in accordance with Rule 23(e)(2)(D), the structure of the proposed Settlement Agreement ensures equitable treatment of the Exaction Class.[9]  *See supra* Section I(C)(c)(2).  Each Exaction Class member will receive a proportionate share of the Net Settlement Fund based upon the total amount of their respective 2014 TRP Contribution.  Settlement Agreement ¶¶ 20, 21.  Accordingly, the Settlement Agreement treats each member of the Exaction Class equitably relative to other members.

### e.   The Remaining Factors Historically Considered by the Court Weigh in Favor of Approving the Settlement

As noted, several Rule 23(e)(2) factors overlap with those historically considered by the Court of Federal Claims.  *See, e.g.*, *Quimby*, 107 Fed. Cl. at 130 (listing the historical factors).  For the sake of completeness, two non-duplicative additional factors not accounted for in the discussion of the Rule 23(e)(2) factors above are addressed below.

The Court has historically considered "the reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement

---

[9] Rule 23(e)(2)(D) overlaps with the fourth factor historically considered by the Court, as discussed in note 3 above.  *Quimby*, 107 Fed. Cl. at 130 ("(iv) the fairness of the settlement to the entire class").

terms." *Id.* at 130 (Factor iii).  As noted, the deadline for objections has passed and EWTF has

certified that none of the 357 Class Members have filed objections.  *See* February 21, 2024 Order

at 2 (stating any objections shall be filed "no later than twenty-one (21) calendar days prior to the

date of the Fairness Hearing"); EWTF Reply at 5.  At Oral Argument, Class Counsel again

confirmed that no Exaction Class member has raised formal or informal objections.  OA Tr. at

16:12–21.[10]

Additionally, the Court considers "[t]he ability of the defendants to withstand a greater

judgment, taking into account whether the defendant is a governmental actor or a private entity."

*Quimby*, 107 Fed. Cl. at 130 n.4 (Factor vi).  Class Counsel and EWTF describe this factor as

"neutral" here, noting that courts have historically given this factor little weight where the

defendant is the federal government.  Mot. Approval Settlement at 21.  This understanding is

consistent with prior opinions issued in this Court.  *See e.g.*, *Quimby*, 107 Fed. Cl. at 130 n.4

(quoting *Berkley,* 59 Fed. Cl. at 681, 713) (internal citations omitted) ("Another factor is '[t]he

---

[10] During the Fairness Hearing, Class Counsel noted the reaction to the Settlement Agreement
from the Exaction Class has been overwhelmingly positive.  OA Tr. at 16:12–21 (The Court: "Do
you have any concerns or have you even informally received any objection or concerns from class
members about the settlement in any regard?"  Class Counsel: "We have not.  We've been in
constant contact with class members.  As you know, there was a very extensive opt-in campaign
through email, through phone calls, and so we developed relationships with many class members
as a result of that opt-in campaign, and everyone who we've spoken with has been thrilled, to say
the least.").  Affidavits filed by class members support that contention.  *See e.g.*, McCarron Decl.
¶ 12 ("Based on its involvement throughout the prosecution and resolution of the Action, EWTF
believes that the proposed Settlement is fair, reasonable, and adequate and in the best interest of
the Exaction Class.  Moreover, EWTF believes that the Settlement represents an exceptional
recovery for the Class, particularly given (i) the Settlement recovers 91.25% of all recoverable
damages against the Government; (ii) the time that has elapsed since Exaction Class members were
forced to make TRP Contributions in 2014; and (iii) the continued risk and delay of litigating the
Government's appeal.  Therefore, EWTF strongly endorses approval of the Settlement by the
Court."); Metzger Decl. ¶ 9 ("[T]he 1199SEIU Funds believe that the proposed Settlement is fair,
reasonable, and adequate and in the best interest of the Exaction Class.").

ability of the defendants to withstand a greater judgment, taking into account whether the defendant is a governmental actor or a private entity.'  But '[t]he defendant's solvency is of minimal concern when the defendant is the federal government,' and is not considered here."). This Court acknowledges the factor but gives it little, if any, weight as Defendant is a governmental actor capable of withstanding greater judgment.[11]

*       *       *

Based on analysis of the relevant legal factors and standards, as well as the information provided to the Court—including the Proposed Settlement Agreement, the Notice to the Exaction Class, class member declarations, the parties' Motions and briefing, along with counsel's representations during the May 1, 2024 Fairness Hearing—the Court is satisfied that the proposed settlement is fair, reasonable, and adequate, in accordance Rule 23(e).

**D.**   **Approval of the Plan Allocating the Net Settlement Fund to Exaction Class Members**

The Court must also formally approve of the Proposed Settlement's plan to allocate the Net Settlement Fund to Class Members.  As reflected in the Notice and Settlement Agreement, each Exaction Class member will receive a proportionate share of the Net Settlement Fund based on its respective 2014 TRP Contribution amount, less a *pro rata* portion of Settlement Fees and Costs.[12]  Notice at 4; Settlement Agreement ¶ 20; *see also* Mot. Approval Settlement at 23–24.

---

[11] During the Fairness Hearing, the Government reaffirmed that it has no concerns with the Settlement Agreement and finds it to comport with Rule 23.  *See* OA Tr. at 16:24–17:11 (The Court: "[Defendant], any concerns with either the fairness of it or the plan of allocation?" . . . Defendant: "We don't have any concerns.  A reduction of 8.75 percent of the judgment against the United States was approved in this settlement by the Attorney General's authorized representative. So we don't have any concerns with the amount.  Like class counsel, we have not heard any concerns from class members.  No one has reached out to us directly to voice any concerns.  So as far as we're concerned, we view the settlement as fair and reasonable.").

[12] EWTF's Motion represents that Class Counsel has provided a full list of Exaction Class member Taxpayer Identification Number's to the Government.  Mot. Approval Settlement at 24.  During

Thus, the payment to each Exaction Class member will be determined by "(1) dividing their respective 2014 TRP Contribution (as set forth in Exhibit 1 to the Judgment) by the total 2014 TRP Contributions for all Exaction Class members—with the resulting fraction expressed as a percentage that is then (2) multiplied by the Net Settlement Fund."  Mot. Approval Settlement at 24.

If a payment is returned as undeliverable, JND shall attempt to locate an updated mailing address and remail the check.  Settlement Agreement ¶ 22.  Should JND be unable to locate a valid mailing address, or should a check remained uncashed for more than 90 days, the uncashed amount will revert back to the Net Settlement Fund and be redistributed to Exaction Class members on a *pro rata* basis, up to their respective 2014 TRP Contribution amount.  *Id*. ¶¶ 22–23.

After review of the Settlement Agreement and for the noted reasons, the Court is satisfied with the proposed allocation of the Net Settlement Fund, and finds it to be fair, reasonable, and adequate.  Accordingly, EWTF's Motion for Final Approval of Settlement and Plan for Allocating Net Settlement Fund to Exaction Class Members (ECF No. 144) is **GRANTED**.

## II.   Award of Attorneys' Fees, Expenses and Case Contribution Award to Class Representative EWTF

The Court must also determine whether to grant Class Counsel's motion for an award of attorneys' fees in an amount of 25% of the common fund, net of expenses; payment of Class Counsel's expenses in the amount of $513,631.77; and a case contribution award in the amount of $25,000 to EWTF.  Mot. Fees at 9.  For the reasons addressed below, Class Counsel's Motion for

---

the Fairness Hearing, Class Counsel expressed that it is confirming the information with members of the Exaction Class.  OA Tr. 17:13–18:2 ("[W]e provided a list of the EINs to the Government back in February, but since that time, we decided we wanted to confirm those EINs.  And so we've reached out to each of the class members for confirmation.  The majority have confirmed and there are a few of those communications are ongoing, but we plan to shore that up and provide the list of the final confirmed EINs to the Government shortly.").

an Award of Attorneys' Fees, Expenses, and Case Contribution Award to Class Representative (ECF No. 145) is **GRANTED.**

### A. <u>Attorneys' Fees</u>

Rule 23(h) governs the approval of attorneys' fees and nontaxable costs.  Rule 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").  The Court, however, has "a fiduciary duty to independently review the reasonableness of class counsel's proposed fee."  *Health Republic Ins. Co. v. United States*, 58 F.4th 1365, 1377 (Fed. Cir. 2023) (quoting *Geneva Rock Prods., Inc. v. United States*, 119 Fed. Cl. 581, 593 (2015), *rev'd in part on other grounds by Longnecker Prop. v. United States*, No. 2015-5078, 2016 WL 9445914 (Fed. Cir. Nov. 14, 2016)).  Therefore, "the court's task is to make its own determination of what fee to award, within the range of reasonable possibilities, considering the relevant principles and precedents addressing comparable facts."  *Id.*

### a. <u>Common Fund Doctrine</u>

Class Counsel base their fee request on the common fund doctrine.  Mot. Fees at 15–17.  Under this method of awarding attorneys' fees, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney fees from the fund as a whole."  *Haggart*, 809 F.3d at 1352 (alterations omitted) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *see also Mercier*, 156 Fed. Cl. at 590; *Kane Cnty., Utah v. United States*, 145 Fed. Cl. 15, 17–20 (2019).  Further, "[t]he Supreme Court has held that the criteria for the application of the common fund doctrine 'are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf.'"  *Mercie*r, 156 Fed. Cl. at 590 (quoting *Boeing Co.*, 444 U.S. at 479).  The Federal Circuit has stated this Court has discretion to decide which approach to use

in calculating reasonable attorneys' fees in common-fund cases. *Health Republic*, 58 F.4th at 1371; *see also Nat'l Veterans Legal Servs. Program v. United States*, No. 16-0745, 2024 WL 1206458, at \*16 (D.D.C. Mar. 20, 2024).[13]  In the present action, the Court opts to apply the percentage-of-the-fund method, and subsequently will conduct a lodestar cross-check to determine whether Class Counsel's requested fees are reasonable.

Here, the parties' proposed distribution method makes clear that the common fund criterion is met.  As reflected in the Notice sent to all 357 class members, each Exaction Class Member will receive a proportionate share of the Net Settlement Fund based on their respective 2014 TRP Contribution amount.[14]  Notice at 4; Mot. Approval Settlement at 23–24.  Thus, as described above, each Exaction Class member has an undisputed and mathematically ascertainable claim to payment.  Accordingly, a common fund exists in this case.

Regardless of whether a common fund exists, this question "is distinct from whether the doctrine may be applied to allow class counsel or the prevailing litigant to recover attorney fees." *Mercier*, 156 Fed. Cl. at 590 (quoting *Haggart*, 809 F.3d at 1352).  Instead, "[r]ecovery of attorney fees under a common fund is based on the existence of some inequity borne by counsel or the

---

[13] Specifically, the Federal Circuit has noted:

> [T]wo common methods [exist] for determining what fee to award, under the reasonableness standard, in a case like this, in which a common fund is recovered. One is a percentage-of-the-fund method, through which "a reasonable fee is based on a percentage of the fund bestowed on the class."  The second is the lodestar method (used generally outside the common-fund context), through which "the court calculates ... the product of reasonable hours times a reasonable rate," and then adjusts that "lodestar" result, if warranted, "on the basis of such factors as the risk involved and the length of the proceedings[.]"  We have recognized that the Claims Court has discretion to decide what method to use.

*Health Republic Ins. Co.*, 58 F.4th at 1371 (internal citations omitted).

[14] *See supra* note 4.

successful litigant." *Haggart*, 809 F.3d at 1352. "Such inequity exists where, in a class action under [Rule] 23, some opt-in plaintiffs are not contractually obligated to contribute to the costs of the litigation because they have not entered separate fee agreements with class counsel." *Mercier*, 156 Fed. Cl. at 590 (quoting *Haggart*, 809 F.3d at 1354).

Here, Class Counsel has litigated the Exaction Class's claims in this near decade-long dispute entirely on a contingent fee basis, fully bearing the risk of nonrecovery for the Exaction Class. Mot. Fees at 28 ("For nearly a decade, Class Counsel single-handedly funded the expenses of this Action while carrying the significant risk that they would receive no compensation whatsoever unless they prevailed. . . .Class Counsel have expended more than 9,000 hours (and a lodestar of $6,351,779.50) on behalf of the Exaction Class and have incurred $513,631.77 in expenses."); Meltzer Decl. ¶¶ 141–55; *see also* Declaration of Charles F. Fuller, dated March 26, 2024 (ECF Nos. 144-1, 145-1) (Fuller Declaration or Fuller Decl.) ¶¶ 3–7. Relevant jurisprudence further supports the proposed fee, especially in view of the temporal length of the dispute, litigation risks borne solely by counsel, and the high, 91.25% recovery for class members. *Moore v. United States*, 63 Fed. Cl. 781, 786 (2005) (citing *Boeing Co.*, 444 U.S. at 478; *Knight v. United States*, 982 F.2d 1573, 1580 (Fed. Cir. 1993); *Applegate v. United States*, 52 Fed. Cl. 751, 755 (2002)) ("[C]lass counsel may request an award of fees from the common fund on the equitable notion that lawyers are entitled to reasonable compensation for their professional services from those who accept the fruits of their labors."); *Mercier*, 156 Fed. Cl. at 590 (internal citations omitted) ("In this case, each of the six named plaintiffs had a retainer agreement with class counsel that provided for a contingency fee of up to 33.3% of their recovery, but counsel did not have fee agreements with any of the other class members. Therefore, it is appropriate to direct an award of attorneys'

fees and expenses based on the common fund doctrine so that the other class members pay their fair share of the costs of class counsel's advocacy on their behalf.").

**b.  Class Counsel's Fee Request is Reasonable**

Class Counsel requests an award of 25% of the settlement amount, net of expenses, or $42,120,941.38.  Mot. Fees at 9, 11.  Class Counsel contends that a "25% fee request is well within the range of fee percentages awarded by Federal Claims courts" and in other Circuits.  *Id.* at 30–31.

When using the percentage-of-the-fund method, the Court of Federal Claims employs a multi-factor test to determine whether the proposed award of attorneys' fees under the common fund doctrine is reasonable:

> (1) the quality of counsel; (2) the complexity and duration of the litigation; (3) the risk of nonrecovery; (4) the fee that likely would have been negotiated between private parties in similar cases; (5) any class members' objections to the settlement terms or fees requested by class counsel; (6) the percentage applied in other class actions; and (7) the size of the award.

*Moore*, 63 Fed. Cl. at 787 (citing *Manual for Complex Litigation* (Fourth) § 14.121); *see also Health Republic Ins. Co.*, 58 F.4th at 1371–72.

**1.  The Quality of Counsel**

Class Counsel represents and the Court agrees that the quality of counsel factor supports the 25% fee requested.  Class Counsel's diligent efforts and success are well documented throughout the course of this action.  *See e.g.*, OA Tr. at 39:9–21 ("Additionally, class counsel has also provided more than adequate representation of the Illegal Exaction Class, as exemplified by class counsel's pioneering the theory of liability of the class members' illegal exaction claim; litigating the Illegal Exaction Class's claim for nearly a decade, including withstanding Defendant's motion to dismiss; obtaining certification of the Illegal Exaction Class; and obtaining

summary judgment in the Exaction Class's favor; and in expending over 9,000 hours of attorney time.  In addition, they secured judgment for **100 percent** of the Exaction Class's damages and negotiated the proposed settlement of **91.25** percent of that judgment." (emphasis added)).

Moreover, in its Motion, Class Counsel cites several examples to underscore the quality of the Class Counsel's representation throughout the course of litigation:

- Beginning in 2013, researched, developed, and pioneered the novel and complex legal claims at issue in the Action.  Meltzer Decl., ¶¶ 9–13; Appx. Ex. C, Declaration of William P. Dale ("Dale Decl."), at ¶¶ 5–13.

- Responded to and overcame Defendant's well-pleaded attacks at the motion to dismiss stage.  Meltzer Decl., ¶¶ 40–49.

- Negotiated separate schedules for the illegal exaction and takings claims, so the Exaction Class's claims could be brought to resolution as quickly as possible. This strategy worked. Summary judgment for the Exaction Class was entered in December 2022, roughly seven months before the Court dismissed the takings claims on summary judgment was entered as to the takings claims in July 2023, a ruling which is now on appeal to the Federal Circuit.  Meltzer Decl., ¶¶ 73–76.

- Obtained certification of the Exaction Class.  Meltzer Decl., ¶¶ 80–84.

- Conducted a vigorous and thorough opt-in campaign to ensure the participation of as many Exaction Class members as possible, a process that lasted several months. Meltzer Decl., ¶¶ 85–95.

- Carefully vetted all opt-in submissions.  Meltzer Decl., ¶¶ 96–102.

- Defeated Defendant's objections to Exaction Class membership, which would have erased nearly $100 million from the Judgment.  Meltzer Decl., ¶¶ 103–108.

- Obtained summary judgment for the Exaction Class.  Meltzer Decl., ¶¶ 109–112.

- Obtained the Judgment for the Exaction Class, representing 100% of recoverable damages.  Meltzer Decl., ¶¶ 109–112.

- Negotiated a cash Settlement for 91.25% of the Judgment amount.  Meltzer Decl., ¶¶ 138–140.

*Id.* at 19 (internal citations in original).

### 2. **The Complexity and Duration of the Litigation**

Class Counsel also argues the duration, as well as the legal and procedural complexity of this action, also weighs in favor of approving the requested fee. *Id.* at 21. This Court agrees.

There is no question of the complex nature and lengthy duration of this action. After concluding HHS's regulations were contrary to law, Class Counsel spent almost a decade and 9,042 hours uncovering and crafting the Exaction Class's novel claim and pursuing an unclear litigation path to recoup payments class members had made to HHS in clear contravention of the statute's plain language. OA Tr. at 5:18–23; Meltzer Decl. ¶¶ 141–48; Dale Decl. ¶¶ 5–13. To that end, the Court of Federal Claims has approved similar fee arrangements under comparable circumstances of duration and complexity. *Moore*, 63 Fed. Cl. at 787 ("Counsel has done an excellent job squiring a case with many procedural complexities. The litigation has gone on for twelve years with counsel investing some 6,000 hours."); *id.* at 789 (in awarding fees equal to thirty-four percent of the common fund, the Court found the award to be "well within acceptable ranges . . . [in part because] the litigation was complex and lasted twelve years"); *Quimby*, 107 Fed. Cl. at 133 (citing *In re Prudential–Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994)) ("The complexity of this litigation [among other factors] together indicate that continued litigation would have created substantial uncertainty for members of the class.").

Indeed, Class Counsel's motion, in weighing these considerations, persuasively argues in favor of approval. First, in terms of duration, the Proposed Settlement resolves almost a decade of litigation, during which Class Counsel investigated and pioneered the untested theory of liability and negotiated a highly favorable settlement. Meltzer Decl. ¶¶ 140–45; Dale Decl. ¶¶ 11–12; Mot. Fees at 22. Second, the legal complexities of this action were "untested, risky, and anything but

certain," Mot. Fees at 22 (noting, for example, that EWTF and Class Counsel had to prevail over *Chevron* deference in the Court interpreting the ACA), with "no other counsel [] willing to take on the risk" of this action. *Id.* (citing Dale Decl. ¶ 8). Third, Class Counsel extensively outlines several procedural complexities that the class action faced before reaching the proposed Settlement. *Id.* at 23–27 (recounting Class Counsel's role after Defendant initially opposed Plaintiffs' proposed definition of the Exaction Class, Class Counsel's process of overseeing the extensive opt-in campaign and sending notice to 650 entities, Class Counsel undertaking its own research to provide notice for stale contacts in Defendant's records, Class Counsel successfully securing an extension of time to complete the opt-in campaign over Defendant's objections, Class Counsel engaging in several months of contact with potential Exaction Class members, Class Counsel evaluating and screening each opt-in request received, and Class Counsel successfully defending 157 of the 357 Class Members when Defendant argued that these Class Members should be excluded from recovery). Having witnessed Class Counsel's actions in this litigation, the Court agrees that the complexity and duration of this action weighs in favor of granting Class Counsel's fee motion.

### 3.  **The Risk of Nonrecovery**

There is no doubt Class Counsel solely bore the risk of nonrecovery for the Exaction Class, litigating the Exaction Class's claims on their behalf since 2016 **entirely** on a contingent fee basis. *Id.* at 28 ("Class Counsel have expended more than 9,000 hours (and a lodestar of $6,351,779.50) on behalf of the Exaction Class and have incurred $513,631.77 in expenses.").

Prior decisions by other judges of this Court also support the proposed fee considering the risk of nonrecovery that Class Counsel shouldered. *See Moore*, 63 Fed. Cl. at 787, 789 (approving a fee award above the median percentage in class actions where "counsel invest[ed] some 6,000

hours" and "the risk of nonrecovery was large as there was no precedent at the time [Class Counsel] took the case"); *Quimby*, 107 Fed. Cl. at 133 (citing *In re Prudential–Bache Energy Income P'ships Sec. Litig.*, 1994 WL 202394, at *6) ("The complexity of this litigation, the government's opposition to the Court's ruling on the merits, and the absence of controlling precedent concerning many of the issues presented together indicate that continued litigation would have created substantial uncertainty for members of the class—with the accompanying risk, under the contingency fee arrangement, that class counsel would be unpaid for all their services."). Accordingly, this factor also favors granting Class Counsel's fee request.

### 4. <u>The Fee that Likely Would Have been Negotiated between Private Parties in Similar Cases</u>

The Court must also consider the fee that likely would have been negotiated between private parties in similar cases. Class Counsel and their noted expert, Professor Brian T. Fitzpatrick, contend that the proposed fee of 25% is "fully consistent with and even less than what would be negotiated privately." Mot. Fees at 29 (citing Declaration of Brian T. Fitzpatrick, dated March 26, 2024 (ECF Nos. 144-1, 145-1) (Fitzpatrick Declaration or Fitzpatrick Decl.) ¶ 14) ("It is well known that [25%] is well below what private parties negotiated when they hire lawyers on contingency.")). The Court agrees. Due to the opt-in nature of this Court, Exaction Class members were also specifically informed that Class Counsel would "request no more than 25% of any judgment or settlement obtained for the Class" before affirmatively choosing to opt-in to this action. *See* Exhibit 1 to Plaintiff's Unopposed Motion for Approval of Proposed Notice Plan (ECF No. 76-1) at 7; Order, dated July 27, 2022 (ECF No. 77) at 1 (approving distribution of the opt-in notice); *see also* Fitzpatrick Decl. ¶ 14 (describing the advanced notice of Class Counsel's fee request and opt-in nature of this Court as "as close to a consensual, privately negotiated fee percentage that you can get in class action litigation."). Additionally, Class Counsel's request is

consistent with relevant opinions issued by other judges of this Court.  *See e.g.*, *Kane Cnty.*, 145 Fed. Cl. at 19 ("A fee of one third the total recovery is consistent with the fee that likely would have been negotiated by private parties.").  Accordingly, this factor also weighs in favor of granting Class Counsel's fee request.

### 5.  Class Member Objections to Settlement Terms or to Fees Requested by Class Counsel

The Court-approved Notice expressly informed Class Members that Class Counsel would propose an award of attorneys' fees not to exceed 25%.  Mot. Fees at 30.  Although the Notice advised Class Members that they may object to Class Counsel's fee request, no objections were filed, and the deadline has since passed.  February 21, 2024 Order at 2 (stating any objections shall be filed "no later than twenty-one (21) calendar days prior to the date of the Fairness Hearing"); EWTF Reply at 5 (certifying that none of the 357 Class Members have filed objections).  Instead, Class Counsel has submitted declarations from the Exaction Class supporting its Motion for attorneys' fees.  *See e.g.*, McCarron Decl. ¶ 13 ("EWTF supports Class Counsel's request for attorneys' fees in the amount of 25% of the Settlement Agreement (which represents a lodestar multiplier of 6.63)"); Metzger Decl. ¶ 12 ("The 1199SEIU Funds believe that the requested fee is fair and reasonable. . . .").

The absence of objections strongly supports granting the requested fee.  *See Health Republic Ins. Co.*, 58 F.4th at 1376 (quoting *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. 03–4578, 2005 WL 1213926, at *18 (E.D. Pa. May 19, 2005)) ("In *Stop & Shop*, the district court's award corresponded to a 15.6 multiplier, but none of the class members objected to the award—rather, plaintiffs offered 'extraordinary support . . . for counsel's request for fees.'"); *Quimby*, 107 Fed. Cl. at 134 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Nat'l*

*Treasury Emps. Union v. United States*, 54 Fed. Cl. 791, 807 (2002)) ("The nearly-unanimous, positive reaction to the request for fees and costs is taken to be a strong indication of the reasonableness of this request, as well as that of the proposed settlement.").

### 6.   <u>The Percentage Applied in Other Class Actions</u>

It is well-established that Class Counsel's proposed award of attorneys' fees, comprising 25% of the Settlement Amount (net of expenses), is well within the range of acceptable attorneys' fees applied in other class actions.  *See Moore*, 63 Fed. Cl. at 787 (citing *Nat'l Treasury Emps. Union,* 54 Fed. Cl. at 807) ("While 40% is within the acceptable range, awards more typically range between 20% to 30% of the total fund, with 50% being the upper limit."); *Quimby*, 107 Fed. Cl. at 133–34 ("A fee equal to thirty percent of a common fund totaling nearly $74 million is, to be sure, a substantial award. The Court notes, however, that this percentage is within the typical range of acceptable attorneys' fees, both in the private sector generally and for other class action suits.")[15]; *Kane Cnty.*, 145 Fed. Cl. at 19 (internal citations omitted) ("The Court is satisfied that an award equal to one third of the common fund is commensurate with attorney fees awarded in other class action common fund cases."); *see also* Mot. Fees at 30 (citing cases).

---

[15] *Quimby* cites several sources in reaching this conclusion.  *See Nat'l Treasury Emps. Union*, 54 Fed. Cl. at 807; *Moore*, 63 Fed. Cl. at 787–89 (awarding fees equal to thirty-four percent of the common fund); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1131–32 (W.D. La. 1997) (approving a fee of thirty-six percent of $127 million settlement); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008) (approving a fee of thirty-two percent of an approximately $66 million settlement and thirty-three percent of a later $39 million settlement); *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) (awarding a fee of thirty percent of a $410 million fund); *In re Vitamins Antitrust Litig.*, No. Misc. 99–197, 2001 WL 34312839, at *10 (D.D.C. July 16, 2001) (awarding thirty-three percent of approximately a $360 million fund).

7.  **The Size of the Award**

Finally, although the size of the proposed award is large, "so is the class members' total recovery." *Nat'l Veterans Legal Servs. Program*, 2024 WL 1206458, at *20 (quoting *Raulerson v. United States*, 108 Fed. Cl. 675, 680 (2013)).  Class Counsel argues that the size of the award factor supports an award of their requested 25% fee, noting that "Class Counsel have vigorously litigated this Action, the Exaction Class has received a tremendous recovery [which equates to over 91% of the Exaction Class's total damages], and there is no windfall for Class Counsel here." Mot. Fees at 33 (citing Fitzpatrick Decl. ¶¶ 15, 20).  As reflected in the Settlement Agreement, Class Counsel negotiated a $169,022,397.28 award for class members — inclusive of all damages, attorneys' fees and out of pocket expenses, and all administrative fees and costs — comprising 91.25% of the amounts paid by the Exaction Class to Defendant for the 2014 TRP plan year. Settlement Agreement ¶ 13.

Indeed, other Courts have found higher proposed fees reasonable in common fund cases. *See, e.g.*, *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 723–24 (2d Cir. 2023) (affirming the district court's attorney fee award of approximately $523 million); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1281 (11th Cir. 2021) (affirming the district court's attorney fee award of $77.5 million); *Nat'l Veterans Legal Servs. Program*, 2024 WL 1206458, at *20 (citing Theodore Eisenberg et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. REV. 937, 948 (2017)) (noting that in common-fund cases with recoveries greater than $100 million, the yearly average fee award ranges from $37.9 million and $124 million).

Despite that the percentage-of-the-fund method clearly demonstrates that the proposed award is reasonable, this Court must also consider a "lodestar crosscheck" before approving an

award of fees to Class Counsel. [16]  Indeed, the Court must use a "lodestar cross-check," to compare the proposed percentage fee "'against the fee that lead counsel would have been awarded on a lodestar basis' to ensure that the award is neither too low, nor too high." *Kane Cnty.*, 145 Fed. Cl. at 19 (quoting *In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 915 (N.D. Cal. 2005)); *see Health Republic Ins. Co.*, 58 F.4th at 1373–74.  The lodestar method is calculated by "multiplying the number of hours reasonably expended by a reasonable hourly rate." *Moore*, 63 Fed. Cl. at 786 (citing *Hensley v. Eckerhart,* 461 U.S. at 424, 433 (1983)). This figure "may be adjusted up or down depending on several equitable factors." *Id.* (citing *Hensley,* 461 U.S. at 434 n.9; *Applegate,* 52 Fed. Cl. at 762–63).  Moreover, Courts may use a risk multiplier when conducting a lodestar analysis to increase or decrease the award of attorneys' fees "on the basis of factors such as the risk of prevailing on the merits of the case and the length of the proceedings." *See Haggart*, 809 F.3d at 1355 n.19.

The Federal Circuit has recently provided instruction on the lodestar cross-check analysis, directing the Court to "[t]wo principles of central importance" found to be informative in the class-action setting: (1) "If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is ... in order"; and (2) "[a] court should disallow windfalls for lawyers." *Health Republic Ins. Co.*, 58 F.4th at 1374 (quoting *Gisbrecht v. Barnhart*, 535 U.S.

---

[16] Importantly, the parties' opt-in notice informed potential class members that any proposed Class Counsel fees would be subject to a loadstar cross-check.  *See* Exhibit 1 to Plaintiff's Unopposed Motion for Approval of Proposed Notice Plan (ECF No. 76-1) at 7 ("In any event, the exact percentage of Class Counsel's fees will be determined by the Court subject to, among other things, the amount at issue in the case and what is called a "lodestar cross-check" (i.e. a limitation on class counsel fees based on the number of hours actually worked on the case).");  *see also Health Republic Ins. Co.*, 58 F.4th at 1373–74, n. 2 (requiring a lodestar cross-check where the class notice stated the cross-check would be used).

789, 808 (2002) (internal quotation marks and citation omitted)).[17]   In finding these principles "reflected in judicial decisions that establish a relevant norm," the Federal Circuit noted that "the resulting multiplier need not fall within any pre-defined range," *id.* at 1375 (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 & n.17 (3d Cir. 2005)), "but '[e]ven when the lodestar method is used only as a cross-check, courts must take care to explain how the application of a multiplier is justified by the facts of a particular case.'" *Id.* (quoting *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (internal citation removed)).[18]   Therefore, courts must nonetheless explain its justification given the particular facts—i.e., "provide sufficient analysis and '[c]onsideration of multipliers used in comparable cases,'" *id.* (citing *In re Rite Aid*, 396 F.3d at 307 & n.17), and pay particular attention to "the reasoning behind ... awards in cases of similar size." *Id.* (quoting *In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 737).   Furthermore, courts should take into account relevant considerations, such as "risk of nonpayment in a contingency-fee commonfund arrangement," *id.*, and the interest in "sustain[ing] the incentive for attorneys to continue to represent such clients."  *Id.* (quoting *Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995)).   Nonetheless, "[m]ore relaxed specificity and documentation standards apply to examination of the lodestar in a percentage-of-the-fund case compared to the standards applied when the lodestar method is directly used to set the fee (especially where paid by the adverse party)." *Id.* at 1378.

---

[17] The Federal Circuit pointed to several other circuits holding that courts should not allow unwarranted windfalls.  *See* 58 F.4th at 1374–75 (citing *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Walmart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001)).

[18] In *Health Republic,* the Federal Circuit noted that "[a] number of courts have surveyed relevant fee awards and noted a norm of implicit multipliers in the range of 1 to 4."  58 F.4th at 1375.

Class Counsel spent more than 9,000 hours on this litigation, and provided the hourly rates and time allocation for its partners, counsel, attorneys, paralegals, and investigators.[19]  *See* Mot. Fees at 35 (citing Meltzer Decl. ¶¶ 147–48).  Specifically, Class Counsel provided a table of each individual's hourly rate, hours worked, and calculated lodestar.  Meltzer Decl. ¶ 148; *see also In re Rite Aid Corp. Sec. Litig*., 396 F.3d at 306–07 ("The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.").  Class Counsel cites to multiple class action cases demonstrating similar billing rates, and this Court finds the detailed rates to be in line with those charged in larger cities like Washington, DC and Philadelphia.  *See* Mot. Fees at 35–36 (citing *e.g.*, *In Kraft Heinz Sec. Litig.*, No. 19-cv-01339 (N.D. Ill. Aug. 8, 2023) (ECF No. 484-7); *In re HP Inc. Sec. Litig.*, No. 20-cv-01260 (N.D. Cal. June 23, 2023) (ECF No. 132-6), *In re Luckin Coffee Inc. Sec. Litig.*, No. 20-cv-01293 (S.D.N.Y. June 10, 2022) (ECF No. 327-7)).

Class Counsel's proposed fee of 25% net expenses "represents a multiplier of approximately 6.63 on Counsel's total lodestar." *Id.* at 36.  Though a 6.63 multiplier is higher than the normal "range of 1 to 4" acknowledged in *Health Republic Ins. Co.*, it is nonetheless reasonable and consistent with the principles established by the Federal Circuit.[20]  *See* 58 F.4th at 1374.

---

[19] Class Counsel represents that it has removed the time related to the takings claim from its calculation.  Fuller Decl. ¶ 3 ("No time . . .  related to takings matters after judgment was entered for the Exaction Class, has been included."); *see also* Mot. Fees at 36 n.14 ("Class Counsel have removed time from their lodestar that is attributable to the takings claim after summary judgment was granted in favor of the Exaction Class."); *see also* OA Tr. at 26:11–27:16.

[20] When questioned by the Court, Class Counsel provided several arguments in support of its proposed 6.63 multiplier. *See, e.g.*, OA. Tr. at 28:16–29:5 (The Court: "I think in *Health Republic*, the Circuit said that the [multiplier] norm is between one and four. . . . So can you just walk me through why 6.63 is not an outlier here . . . why I should consider that to be reasonable?"  Class Counsel: "Sure.  So a couple of points.  The *Health Republic* case does make clear that it's not

*First* and significantly, no class members objected to the proposed fee. *Compare* Mot. Fees at 30, *and* EWTF Reply at 5 (noting no objections), *with Health Republic Ins. Co.*, 58 F.4th at 1369 (noting 34 class members objections), *and Mercier*, 156 Fed. Cl. at 587–89 (noting three objections, including one to the 30% fee request). In *Health Republic Insurance Co.*, the Federal Circuit required a lodestar cross-check to support approval of an 18–19 multiplier. *Health Republic Ins. Co.*, 58 F.4th at 1378. In distinguishing *Health Republic Insurance Co.* from a district court's award corresponding to a 15.6 multiplier, the Court specifically noted that "none of the class members objected to the award [in that case]—rather, plaintiffs offered 'extraordinary support . . . for counsel's request for fees.'" *Id.* at 1376 (citing *Stop & Shop Supermarket Co.*, 2005 WL 1213926, at \*18). The lack of objections here is particularly instructive and supports the slightly elevated multiplier. *See id.* (citing *Stop & Shop Supermarket Co.*, 2005 WL 1213926, at \*18). Moreover, the class members in this matter are similarly sophisticated businesses and have submitted declarations expressing extraordinary support of the fees requested. Specifically, Class Representative EWTF and 1199SEIU Benefit & Pension Funds (which includes three funds which are members of the class and collectively represent the highest amount paid by any Exaction Class Member ($15,531,264)) submitted declarations that strongly support Class Counsel's fee request.[21] *See* McCarron Decl. ¶ 14; Metzger Decl. ¶¶ 1, 5, 12, 14. Additionally, during the

---

hard and fast, that you do have to look at -- I think they're called external factors, but there are factors that you should look at. It's not . . . a rigid application where you're saying one to four, take your pick . . . And I think the differentiating factor here, quite honestly, is the result and the risk."); *id.* at 29:16–25 (referencing *Quimby* and *Mercier*, and pointing to the lower rates of recovery secured, 80% and 65%, respectively).

[21] McCarron Decl. ¶ 14 ("Moreover, EWTF takes seriously its role as Class Representative to ensure that the attorneys' fees are fair in light of the result achieved for the Exaction Class, the work performed by Class Counsel, and the substantial risks involved in the Action. Here, EWTF believes that the requested fee is fair and reasonable in light of the $169 million recovery obtained for the Exaction Class—which represents 91.25% of all recoverable damages—the excellent work

Fairness Hearing, Defendant stated that Class Counsel's requested attorneys' fees were "in the realm of reasonableness" and stated it was neither concerned with the fee amount, nor the proposed 6.63 multiplier as it pertains to this action.[22]

*Second*, the multiplier is reasonable based on the hours expended since 2016.  *Compare* Mot. Fees at 19, 28 (noting that Class Counsel has expended more than 9,000 hours to successfully obtain summary judgment in favor of the Exaction Class, amounting to full recovery of TRP contributions for 2014), *with Mercier*, 156 Fed. Cl. at 583 (settling six weeks before trial); *see also* Mot. Fees at 20 (citing Meltzer Decl. ¶¶ 14–15) ("Class Counsel initially filed an action in the District of Maryland . . . in 2016 . . . .").  Although the proposed attorneys' fees are substantial, they are far from a windfall given the significant amount of time and effort expended by Class Counsel in this near decade-long dispute.[23]

---

performed by Class Counsel over the course of many years, and the risks and challenges undertaken by Class Counsel in litigating the Action."); Metzger Decl. ¶¶ 12, 14 ("The 1199SEIU Funds believe that the requested fee is fair and reasonable in light of (i) the $169 million recovery obtained for the Exaction Class—which represents 91.25% of the Exaction Class's recoverable damages; (ii) the excellent work performed by Class Counsel over the course of many years as well as their dedication to obtaining a favorable result for the Exaction Class since the case's inception nearly a decade ago; and (iii) the risks and challenges undertaken by Class Counsel in litigating the Action . . . .   [T]he 1199SEIU Funds fully support Class Counsel's request for attorneys' fees, litigation expenses, and case contribution award.").

[22] OA Tr. at 33:21–34:5 (The Court: "Do you have any concerns with the amount of attorneys' fees being proposed here?"  Defendant: "We do not, Your Honor. As you mentioned, the report indicates that even though it's a bit above average, it's still within the realm of reasonableness, it's within the realm of what other cases have decided, and I think the big thing for us is that no class member has objected.  And as far as we're concerned, if the class members are satisfied and happy with the result, then we have no concerns with it either. . . ."); *id*. at 34:21–35:1 (The Court: "[S]o you agree with Professor Fitzpatrick's views that the 6.63 multiplier is within the acceptable range . . . for purposes of the lodestar cross-check here?"  Defendant: "Yes, for this particular case, we have no concerns with that view.").

[23] Pursuant to Professor Fitzpatrick's declaration, a multiplier of 6.63 is well within the range of previous cases with similar characteristics:

*Third*, comparable awards demonstrate the reasonableness of the multiplier and total fee overall when compared to the total award and its percentage of the total damages requested. The 91.25% recovery is significantly higher than others. *Compare* Mot. Fees at 10, *with Mercier*, 58 Fed. Cl. at 584 (noting a recovery of "slightly more than 65% of the maximum amount Plaintiffs

---

The stated rationale of the crosscheck is to prevent class counsel from reaping a so called "windfall." *Health Republic*, 58 F.4th at 1374. In my opinion, there will be no such windfall here. If the fee request is granted, class counsel will receive a multiplier of 6.63. Although this would be above average, *see* Fitzpatrick, *Empirical Study, supra*, at 834; *Eisenberg-Miller 2010, supra*, at 274; *Health Republic*, 58 F.4th at 1374, it would be well within the range of previous cases. *See also, e.g., Lloyd v. Navy Fed. Credit Union*, 2019 WL 2269958, at *13 (S.D. Cal. May 28, 2019) (awarding fee even though "[t]he Court is aware that a lodestar cross-check would likely result in a multiplier of around 10.96"); *In re Doral Financial Corp. Securities Litigation*, No. 05-cv-04014-RO (S.D.N.Y. Jul. 17, 2007) (ECF 65) (same with 10.26 multiplier); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, No. 11-cv-00011 (D.N.J. Jan. 26, 2015) (awarding fee with 8.91 multiplier); *Raetsch v. Lucent Tech., Inc.*, No. 05-cv-05134 (D.N.J. Nov. 8., 2010) (same with 8.77 multiplier); *Thacker v. Chesapeake Appalachia, L.L.C.*, No. 07-cv-00026 (E.D. Ky. Mar. 3, 2010) (same with 8.47 multiplier); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148-PBS, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (same with 8.3 multiplier); *Hainey v. Parrott*, 2007 WL 3308027, at *1 (S.D. Ohio Nov. 6, 2007) (same with 7.47 multiplier); *In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 732 (3rd Cir. 2001) (same with of 7 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp.2d 587 (E.D. Pa. 2005) (same with 6.96 multiplier); *Steiner v. American Broadcasting Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming fee with 6.85 multiplier); *In re IDB Communication Group, Inc., Sec. Litig.*, No. 94-3618 (C.D. Cal. Jan. 17, 1997) (awarding fee with 6.2 multiplier); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (same with 6 multiplier); *In re RJR Nabisco*, 1992 WL 210138 (same); *In re Charter Communications, Inc., Securities Litigation*, 2005 WL 4045741, *18 (E.D. Mo. 2005) (same with 5.61 multiplier); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y.1997) (same with 5.5 multiplier); *Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 3463337 at *10 (S.D. Tex. Dec.18, 2001) (same with 5.3 multiplier).

Fitzpatrick Decl. ¶ 25.

could have recovered"), *and Stop & Shop Supermarket Co.*, 2005 WL 1213926, at \*6, \*9 (noting a recovery of approximately 11.4% of total damages to the Settlement Class); *see also* Fitzpatrick Decl. ¶ 25 (citing cases).  The multiplier itself is also comparable to other cases with significant awards.  *See In re Dell Techs. Inc. Class V Stockholders Litig.*, 300 A.3d 679, 726–28 (Del. Ch. 2023) (approving a multiplier of 7 for a $285 million fee based on 53,000 hours expended and complex discovery); *In re Rite Aid Corp. Secs. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (cross-checking and finding a lodestar multiplier in the range of 4.5 to 8.5 "unquestionably reasonable" and ultimately awarding 25% attorneys' fees from a $193 million fund based on the complexity, risk of non-payment, and a table demonstrating average attorney's fees of 31.71%).

Accepting the billing rates as reasonable, considering the recent instruction from the Federal Circuit, noting that there have been no objections by class members, and taking into account the particular facts of this case, the Court finds that the lodestar cross-check confirms Class Counsel's request for an award of 25% of the settlement amount, net of expenses is reasonable.

Accordingly, following the Court's independent review of Class Counsel's proposed fee, the Court **GRANTS** Class Counsel's motion for an award of 25% of the settlement amount, net of expenses, or **$42,120,941.38**.

**B.  Class Counsel Expenses**

Class Counsel moves the Court to approve reimbursement of $513,631.77 in incurred expenses.  Mot. Fees at 40.  Class Counsel represents these expenses were necessarily incurred during litigation, and include, "document management costs, expert/consultant fees, notice administrator fees, online research, court reporting and transcripts, photocopying, postage expenses, and travel-related costs." *Id.* at 41 (citing *Quimby*, 107 Fed. Cl. at 135); *see also* OA

Tr. at 32:12–33:16; *id.* at 34:6–9 (Defendant noting it has reviewed the proposed expenses and finds them to be reasonable).

"It is well settled that counsel who have created a common fund for the benefit of a class are entitled to be awarded for out-of-pocket costs reasonably incurred in creating the fund." *Mercier*, 156 Fed. Cl. at 593 (citing *Kane Cnty.*, 145 Fed. Cl. at 20) (approving a request for out-of-pocket expenses after class counsels' declarations represented that "each expense was actually incurred, and was both reasonable and necessary to prosecute this action"); *Nat'l Veterans Legal Servs. Program*, 2024 WL 1206458, at \*16 (quoting *Mercier*, 156 Fed. Cl. at 593); *see also Quimby*, 107 Fed. Cl. at 134–35 (citing *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *Brown v. Pro Football, Inc.*, 839 F. Supp. 905, 916 (D.D.C. 1993), *rev'd on other grounds,* 50 F.3d 1041 (D.C. Cir. 1995)) ("The Court also agrees with class counsel that their expenses are reasonable and were necessarily incurred to achieve the benefit obtained . . . [T]he expenses are for such items as travel for court appearances, expert witnesses and consultants, courier and shipping services, copying and business services, filing fees, hearing transcripts, local counsel fees, legal research, and class action administration.").

Here, neither Defendant nor any members of the Exaction Class object to Class Counsel's request for expenses.  Moreover, the Court has reviewed Class Counsel's declarations in support of their motion and finds them to be reasonable out-of-pocket expenses that are within the norms for such a complex case.  Meltzer Decl. ¶ 153; Fuller Decl. at ¶ 7.  Accordingly, the Court **GRANTS** Class Counsel's motion for reimbursement of its expenses in the amount of **$513,631.77**, as related to its representation of the Exaction Class.

**C.  <u>Case Contribution Award of $25,000 to EWTF</u>**

Finally, Class Counsel moves for a $25,000 case contribution award payable to Class Representative EWTF.  Mot. Fees at 41; *see also* OA Tr. at 35:8–36:12; *id.* at 36:13–19 (Defendant has no concerns and does not object to the proposed class contribution award).

Case contribution awards, "also known as 'incentive' or [service] awards, are distributions from the common fund to class representatives in recognition of their service to the class and their role in the litigation."  *Nat'l Veterans Legal Servs. Program*, 2024 WL 1206458, at *16.  These awards "recognize the unique risks incurred and additional responsibility undertaken by named plaintiffs in class actions."  *Mercier*, 156 Fed. Cl. at 589 (citing *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006)).  These incentive awards appropriately compensate named Class Representatives for their participation and "are not uncommon in class action litigation where, as here, a common fund has been created for the benefit of the class."  *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1218.  A proposed case contribution award of $25,000 to EWTF aligns with other awards ordered by this Court and those in other Circuits.  Indeed, "[n]umerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent."  *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990) (internal citations omitted); *see also Nat'l Veterans Legal Servs. Program*, 2024 WL 1206458, at *21 (finding class counsel's request of a case contribution award of $10,000 for each of the three named plaintiffs appropriate); *Mercier*, 156 Fed. Cl. at 590 (finding class counsel's motion for approval of a $20,000 case contribution award to each of six class representatives reasonable); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (finding $7,500 awards to three representative

plaintiffs appropriate); *In re Dun & Bradstreet Credit Servs*., 130 F.R.D. at 373–74 (finding class representatives entitled to incentive awards ranging from $35,000 to $55,000).

In the present action, EWTF, as the lone class representative, made significant efforts on behalf of the Exaction Class during the course of this litigation.  Specifically, EWTF actively participated in pursuing the Exaction Class's claims with Class Counsel, through regular communication and supervision, and actively participated in each stage of litigation, including extensive discovery and settlement negotiations.  Meltzer Decl. ¶ 155 ("[EWTF's] efforts included, among other things: (i) engaging in initial discussions with Class Counsel for purposes of gathering facts to assist in the development of EWTF's claims; (ii) reviewing and commenting on all material Court submissions and other case documents; (iii) participating in discovery, including responding to initial disclosures, 24 document requests, and 16 interrogatories served by Defendant and gathering and producing more than 2,000 pages of documents; (iv) participating in discussions with Class Counsel regarding litigation strategy and developments in the litigation, including settlement; and (v) approving the Settlement."); *see also* McCarron Decl. ¶ 8 ("From the outset of the litigation, EWTF has been committed to prosecuting this case and maximizing the recovery for the Exaction Class.  As the Class Representative, EWTF understood that it owed a fiduciary duty to all Exaction Class members to provide fair and adequate representation and has diligently worked with counsel to prosecute the case vigorously."); *id.* ¶¶ 8–11 (certifying EWTF's role in reviewing and supervising Class Counsel throughout the course of litigation, settlement discussions, and in the settlement approval process presently before this Court).

The Court finds the proposed case contribution award of $25,000 reasonable.  Accordingly, the Court **GRANTS** Class Counsel's motion for a **$25,000** case contribution award for Class Representative EWTF.

## <u>CONCLUSION</u>

For the reasons explained above, EWTF's Motion for Final Approval of Settlement and Plan for Allocating Net Settlement Fund to Exaction Class Members (ECF No. 144) is **GRANTED** and Class Counsel's Motion for an Award of Attorneys' Fees, Expenses, and Case Contribution Award to Class Representative (ECF No. 145) is **GRANTED**.  The Court **DIRECTS** the Clerk of Court to enter judgment dismissing the case.


IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

May 16, 2024
Washington, D.C.

46